175 So.2d 905 (1965)
Mrs. Lora M. MAHAFFEY, Plaintiff and Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Appellee,
Charles R. Frensley, Defendant and Appellant.
No. 1409.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1965.
Rehearing Denied June 24, 1965.
*906 Jeron J. LaFargue, Sulphur, for defendant-appellant.
Kaufman, Anderson, Leithead, Scott & Boudreau, by Everett R. Scott, Jr., Lake Charles, for plaintiff-appellee-appellant.
*907 Stockwell, St. Dizier, Sievert & Viccellio, by Fred H. Sievert, Jr., Lake Charles, for defendant-appellee-appellant.
Before FRUGE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiff seeks damages for personal injuries sustained in an intersectional collision. Defendants are Charles R. Frensley, employer of the driver of the other vehicle, and State Farm Mutual Automobile Insurance Company, the alleged liability insurer of the Frensley vehicle. After a trial on the merits, the district judge held Frensley liable for his employee's negligence, but sustained a coverage defense urged by the insurer. The defendant, Frensley, appealed. Plaintiff also appealed seeking an increase in the award and reversal of that part of the judgment dismissing the insurer. The insurer answered the appeal, asking that in the event it be held liable, plaintiff's demands be rejected and, alternatively, that the quantum be reduced.
The issues are (1) negligence of Frensley's driver, (2) contributory negligence of plaintiff, (3) insurance coverage and (4) quantum.
We will first address ourselves to the issue of negligence. The accident occurred on February 6, 1962 at about 5:00 p. m. at the intersection of Hodges and Seventeenth Streets in the City of Lake Charles. Plaintiff was going north on Hodges Street, which has the right of way, at a speed of about 30 miles per hour, approaching the intersection. The Frensley vehicle was going west on Seventeenth Street. Traffic on Seventeenth Street is controlled by a stop sign, establishing Hodges as the favored street. The driver of the Frensley vehicle testified he stopped at the stop sign; looked, but did not see any vehicles approaching from either direction; then proceeded only 8 or 10 feet into the intersection where the impact occurred. The left front of the Frensley's vehicle struck the right front of plaintiff's automobile in the northeast quadrant of the intersection.
It is abundantly clear that the driver of the Frensley vehicle was negligent. A motorist must not only stop in obedience to a stop sign, but he is required to see approaching vehicles, which he should see, on the favored street and to yield to them the right of way. Howard v. Insurance Company of North America, La.App., 162 So.2d 165 (3rd Cir. 1964). The Frensley driver was clearly negligent in not seeing and yielding the right of way to plaintiff's vehicle, which was approaching at a reasonable speed and was clearly visible.
Defendants argue alternatively that Mrs. Mahaffey was contributorily negligent in failing to keep a proper lookout. Essentially, this argument is that Mrs. Mahaffey had the last clear chance to avoid the accident, i. e., that she saw or should have seen the Frensley vehicle, negligently entering the intersection, in time to avoid the collision.
The applicable rule of law is that the motorist, knowingly on the favored street, has the right to assume that any driver approaching the intersection on the less favored street will yield the right of way; and such favored motorist can indulge in this assumption until he sees or should see that the other driver is not going to obey the law. Hilton v. Bankers Fire & Marine Insurance Company, La.App., 134 So.2d 82 (3rd Cir. 1961); Benoit v. Vincent, La.App., 132 So.2d 75 (3rd Cir. 1961). Here, Mrs. Mahaffey testified she knew she had the right of way; was looking straight ahead; didn't see the Frensley vehicle until just before it struck her; and that when she first saw it, it was moving. Even assuming, as defendants contend, that the Frensley vehicle was stopped at the sign; and assuming that Mrs. Mahaffey should have seen it there; it is obvious that by the time the Frensley vehicle moved off from the stop sign, Mrs. Mahaffey was so close she did not have time to avoid the *908 collision. It is our conclusion that Mrs. Mahaffey was not contributorily negligent.
The next issue is the insurer's coverage defense. The relevant facts show that Frensley is in the laundry and dry cleaning business. At one time he operated at least 7 delivery vehicles, which were insured with the defendant, State Farm Mutual Automobile Insurance Company, under a fleet policy. Such a policy is available to persons operating 5 or more vehicles. In 1961, 3 of Frensley's vehicles became inoperable, leaving only 4 in running condition. On November 10, 1961, the fleet policy was canceled and separate policies were issued on the 4 vehicles in operation.
A few days before the accident on February 6, 1962, 2 of these 4 vehicles were "laid up" for repairs, leaving only 2 in running condition. Frensley decided he could quickly put another vehicle in operation by installing a new motor in the "shell" of a 1958 Volkswagen panel truck, which was one of the three vehicles that became inoperable in 1961, and was still owned by him and had been stored at McGee Motors in Lake Charles. He advised Mr. Vincent, agent for State Farm, of this plan and told him that when the new motor was installed he would call Vincent and have one of the 4 insurance policies changed to cover this 1958 Volkswagen as the described vehicle.
The new motor was installed on the morning of Saturday, February 4. Frensley placed the 1958 Volkswagen in use that afternoon. This was the vehicle involved in the accident at about 5:00 p. m. on Monday, February 6. Frensley had not called Mr. Vincent, prior to the accident, to advise which of the 4 policies should be changed to show the 1958 Volkswagen panel truck as the described vehicle. Actually, it was not until Tuesday, February 7, that Frensley notified Mr. Vincent of the accident and of the fact that the vehicle in question had been placed in operation.
Each of the 4 policies in question provides generally for coverage of (1) the vehicle described in the policy, (2) a temporary substitute automobile, not owned by the named insured, and (3) a newly acquired automobile. It is clear that the vehicle involved in the accident was not described in any of the policies. It is likewise clear that it was not a temporary substitute automobile, because it was owned by the named insured. The argument made by plaintiff, and by the defendant Frensley, is that the 1958 Volkswagen panel truck was covered as a "newly acquired automobile".
Although 2 of the 4 policies in question are written on the "National Standard Automobile PolicyCombination" "Form" and the other 2 are written on the "Family Automobile PolicyCombination Form", the policy provisions regarding newly acquired automobiles, insofar as pertinent here, are essentially the same and we quote from one policy as follows:
"(4) Newly Acquired Automobilean automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household if (1) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy."
The parties urging coverage argue that when this 1958 Volkswagen panel truck became inoperative in 1961, and was left by Frensley at McGee Motors, it lost its identity as an automobile. Hence, when a new motor was installed on February 4, 1962, (which was apparently all that was necessary to place the vehicle in running condition, and which was done in the short period of 3 hours) it again acquired the status of an automobile. Thus, the argument continues, it again became an automobile, ownership of which was acquired by the named *909 insured during the policy period and it replaced another automobile owned by the insured and covered by the policy, i. e., one of the 2 insured vehicles which were "laid up."
The contrary argument, made by the insurer, is that, although inoperable, the vehicle never lost its identity as an automobile; that it was owned by the named insured when the policy issued and hence it is not a newly acquired automobile.
No case has been cited on the precise issue presented. In both Collard v. Globe Indemnity, La.App., 50 So.2d 838 and Roy v. State Farm Mutual Insurance Co., La.App., 152 So.2d 566, the ownership of the replacing vehicle was clearly acquired during the policy period.
The district judge here reasoned: "* * * the fact that it was inoperative for a time, was subsequently repaired and became operative, did not place it in the category of a newly acquired automobile." We agree. An automobile, although in need of a new motor, is still an automobile, as this term is ordinarily understood. Frensley did not acquire an automobile. He only put a new motor in an old automobile he already owned.
Furthermore, we think this construction is consistent with the intention of the contracting parties. The obvious purpose of the provision regarding "newly acquired automobiles" is to provide automatic coverage, without even the necessity of notice to the insurer, for an automobile acquired by the named insured during the policy period to replace a vehicle covered by the policy. But this provision was not intended to cover another automobile owned by the insured at the time the policy issued and used to replace the described vehicle. To hold otherwise, in a situation like the present, would permit an assured with a number of vehicles, some in operating condition and some in need of repair, to put them in and out of service, contending that all are covered by the policies, when in fact no premiums are being paid for some of them. This may be possible under a fleet policy, but not under these separate policies.
A second argument appears to be that State Farm is estopped to deny coverage. The facts show that Mr. Vincent told Frensley the necessary change in the policy would be made when the vehicle was repaired and Vincent was notified. Mr. Vincent did not agree to change the policy until he was further notified. Vincent actually had no way of knowing which of the policies was to be changed, until so advised by Frensley. There was no representation by Vincent on which Frensley relied to his detriment. Hence, no estoppel.
The final issue is quantum. As a result of the accident, Mrs. Mahaffey, 71 years of age, suffered myofascial strains in both the cervical and lumbar areas of the back, superimposed on an arthritic condition. She was not hospitalized but she did have pain, with muscle spasm, for a period of about 5 months. She underwent some 50 therapeutic treatments in addition to taking drugs for pain, etc. The trial judge awarded Mrs. Mahaffey $3,500 for pain and suffering, plus her medical expense. We find no abuse of the great discretion allowed the trial judge as to quantum.
For the reasons assigned, the judgment appealed is affirmed.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.