Delbert J. STOCKBERGER,
Appellant-Plaintiff,

v.

MERIDIAN MUTUAL INSURANCE
COMPANY, Harvey Clarey [*sic*],
Appellees-Defendants.

No. 3–278A46.

Court of Appeals of Indiana,
Third District.

Oct. 25, 1979.

Jeffry G. Price, Peru, for appellant-plaintiff.

R. Kent Rowe, Paul M. Oleniczak, South Bend, for Meridian Mut. Ins. Co.

William J. Reinke, James E. McMahon, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, for Harvey Clary.

STATON, Judge.

Delbert J. Stockberger owned a 1960 pickup truck which was involved in an accident on August 22, 1974. When Meridian Mutual Insurance Company received Stockberger's accident claim, it denied insurance coverage on the truck. Stockberger filed a complaint on contract seeking damages against Meridian and Harvey Clary, d/b/a Rouch Agency. Additionally, Stockberger alleged that Clary was negligent. At the close of Stockberger's presentation of evidence, the trial court granted motions tendered by Meridian and Clary for judgment on the evidence, pursuant to Ind. Rules of Procedure, Trial Rule 50(A). The court found, as a matter of law, that Stockberger was not entitled to coverage and that Clary was not negligent.

Stockberger appeals. We affirm.

Stockberger's action against Meridian and Clary developed from the following factual situation. In October, 1973, Stockberger purchased a 1960 one-ton pickup truck and a 1952 pickup truck, both not operable and not licensed. Neither vehicle was insured. On February 11, 1974, Clary issued Stockberger a policy with Meridian to renew coverage on a 1963 ½-ton pickup truck, effective from April 3, 1974 to October 10, 1974.

Stockberger, Clary, and other gentlemen in the community would often drink their morning coffee together at a coffee shop in Rochester. While they were having their morning coffee one day in May, 1974, Stockberger told Clary that the 1960 pickup was being repaired and would probably be ready for use in 2 weeks. Stockberger and Clary both testified that the conversation occurred, but their recollections of the discussion vary.

Stockberger insisted that he requested Clary to transfer coverage from the 1963 truck to the 1960 truck. He testified that Clary requested the serial numbers from the truck. Stockberger recalled checking for the numbers and was sure that he provided them to Clary at a later date. Clary's version of the conversation was that he advised Stockberger that the truck should be insured but nothing further was discussed about insurance coverage.

While the truck was being driven by Stockberger's wife, it was involved in a collision with another motor vehicle on August 22, 1974. Stockberger notified Clary of the accident, but Clary could not find any cards indicating coverage on the 1960 truck. Clary did refer the matter to Meridian. Meridian wrote Stockberger a letter on September 6, 1974 which denied coverage of the 1960 truck and stated that Meridian would not provide a defense for Stockberger in any legal actions arising from the collision.

The 1963 truck was in good condition and had been used as a second vehicle. When the 1960 truck was put into operation, the 1963 truck was parked in Stockberger's barn lot. Stockberger was not anxious to

sell the 1963 truck at that time, but did sell it in April, 1976. After the accident with the 1960 truck, the 1963 truck was used.

At the time of the accident Stockberger had four vehicles insured through Clary, including the 1963 truck, but not all of the policies on these vehicles were with Meridian. Clary would procure insurance for his customers with any of several companies, depending upon the type of coverage desired. For example, Clary was not aware that Stockberger owned the 1952 truck until after the accident with the 1960 truck occurred.

The relevant provisions of the policy on the 1963 truck are set forth as follows:

"INSURING AGREEMENTS

"1. COVERAGE A—BODILY INJURY LIABILITY.
COVERAGE B—PROPERTY DAMAGE LIABILITY.

"To pay for the Insured all sums which the Insured shall be legally obligated to pay as damages because of:

"A. bodily injury sustained by any person, and

"B. property damage,

"arising out of the ownership, maintenance or use of the described automobile or a non-owned automobile, and to defend any suit against the Insured for such damages, even if groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

\*    \*    \*    \*    \*    \*

"COVERAGE D—COMPREHENSIVE—EXCLUDING COLLISION.

"1. To pay for direct and accidental loss of or damage to the described automobile or a non-owned automobile except by collision. For the purpose of this coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, or colliding with a bird or animal,

shall not be deemed to be loss caused by collision.

"PARKED CAR COVERAGE (COVERAGE D).

"2. To pay for damage by collision to the described automobile when such automobile is legally parked except at an automobile business, is not occupied by any person and is in the custody of the named Insured.

\*    \*    \*    \*    \*    \*

"III. DEFINITION OF AUTOMOBILE
'Automobile' means a land motor vehicle, trailer or semitrailer, and includes its equipment and other equipment permanently attached thereto.

'Described automobile' means the private passenger or utility automobile described in the declarations, and also includes:

\*    \*    \*    \*    \*    \*

"2. a newly acquired automobile;

\*    \*    \*    \*    \*    \*

" 'Utility automobile' means an automobile with a load capacity of fifteen hundred pounds or less of the pickup body, sedan delivery or panel truck type.

\*    \*    \*    \*    \*    \*

" 'Newly acquired automobile' means a private passenger or utility automobile, ownership of which is acquired by the named Insured:

"1. during the policy period, or

during the last 30 days of the previous policy period and notice of the acquisition has been given to the Company within 30 days after its acquisition; if either it replaces an automobile described in the declarations of this policy or the Company insures all automobiles owned by the named Insured on the delivery date of the newly acquired automobile; provided, the named Insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile."

On appeal, the central issue Stockberger raises against Meridian is: was the policy

ambiguous as to the qualifications of a replacement vehicle? He contends that the 1960 truck could not qualify as a replacement vehicle until the time that it was rendered operable for use on the highways. Therefore, he provided timely notice of acquisition to Clary during the conversation in May, 1974.

Meridian maintains that for purposes of the policy provisions the vehicle was acquired in October, 1973. Thus, the requisite 30-day notice of acquisition was not timely.

## I.

### Automatic Coverage

■ An automatic insurance clause in standard automobile liability policies is for the insured's benefit, and

> "is intended to meet the necessity for maintaining coverage in the situation arising from the recognized custom among insured owners of acquiring other cars by replacement and new purchases during the life of their policies, and to provide coverage for the newly acquired car at the earliest time the insured needs protection." (Footnotes omitted.).

12 G. Couch, *Cyclopedia of Insurance Law* § 45:184 (2d ed. 1964). If the policy requires that notice be given to the insurer within a specified time in order to continue coverage, it is mandatory. 7 Blashfield, *Automobile Law and Practice* § 316.6 (3rd ed. 1966).

This Court has not previously construed an automatic insurance clause for automobiles. However, courts in other jurisdictions have interpreted this type of provision. Two disparate lines of cases have developed.

The prevailing line of cases hold that the test of when an automobile is "newly acquired" for purposes of giving the requisite notice of acquisition is not when the vehicle is rendered operable but instead when it was acquired. *Reciprocal Exchange v. Noland* (8th Cir. 1976), 542 F.2d 462; *Allstate Insurance Company v. Stevens* (9th Cir. 1971), 445 F.2d 845; *Williams v. Standard Accident Insurance Company* (1958), 158 Cal.App.2d 506, 322 P.2d 1026; *Illinois National Insurance Co. v. Trainer et al.* (1971), 1 Ill.App.3d 34, 272 N.E.2d 58; *Brown v. State Farm Mutual Automobile Insurance Co.* (Ky.App.1957), 306 S.W.2d 836; *Mahaffey v. State Farm Mutual Automobile Insurance Company* (La.App.1965), 175 So.2d 905; *Collard v. Globe Indemnity Co.* (La. App.1951), 50 So.2d 838; *Providence Washington Insurance Company v. Hawkins* (Tex.Civ.App.1960), 340 S.W.2d 874.

The rationale behind these cases is that an automobile is an automobile, as the term is ordinarily understood. The fact that the automobile is not used on the highways while it is being repaired does not change its status as an automobile under the terms of the policy. *Williams v. Standard Accident Insurance Company, supra.* Interpreting the insurance policy as a whole, the *Williams* court found that the coverage was not limited to liability arising out of use and maintenance on the highway, but included an automobile being repaired and maintained while inoperable. Other terms of the policy, such as coverage resulting from fire or theft, have been held to indicate that the policy was intended for other than just highway use. *Wisbey v. Nationwide Mutual Insurance Co.* (1973), 264 Or. 600, 507 P.2d 17.

The court in *Mahaffey v. State Farm Mutual Automobile Insurance Company, supra,* found this construction to be consistent with the intent of the parties:

> "[T]his provision was not intended to cover another automobile owned by the insured at the time the policy issued and used to replace the described vehicle. To hold otherwise, in a situation like the present [new motor put in an old automobile], would permit an assured with a number of vehicles, some in operating condition and some in need of repair, to put them in and out of service, contending that all are covered by the policies, when in fact no premiums are being paid for some of them. . . ."

175 So.2d at 909.

The second line of cases, which grant coverage, consider the principal purpose of the automatic insurance to be that of pro-

viding coverage for an automobile which is to be driven on the highways and may become involved in an accident. *Luke v. American Family Mutual Insurance Company* (8th Cir. 1973), 476 F.2d 1015, *cert. denied,* 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105; *Glens Falls Insurance Company v. Gray* (5th Cir. 1967), 386 F.2d 520.

The rationale of these cases is that traveling on highways exposes the vehicle's operator to liability, and that the risk for the insurance company is limited to one vehicle at a time, depending upon usage.

■ Our construction of the policy is guided by basic tenets of insurance law. An insurance policy is a contract between two parties; therefore, the law of contract rather than the law of negligence is controlling. *American States Insurance Co. v. Aetna Life & Casualty Company* (1978), Ind.App., 379 N.E.2d 510. The language of the policy must be reasonably construed by the court which may not find coverage unless the language of the policy admits liability. *Town & Country Mutual Insurance Company v. Owens* (1968), 143 Ind.App. 522, 241 N.E.2d 368.

■ Our objective is to ascertain and enforce the intent of the parties to the insurance contract. *Meridian Mutual Insurance Company v. Gulf Insurance Company* (1977), Ind.App., 366 N.E.2d 190. All the provisions in a policy must be considered in determining its meaning. *Liddy et al. v. Companion Insurance Company* (1979), Ind. App., 390 N.E.2d 1022. To be ambiguous, the policy

"must be susceptible of more than one interpretation, so that reasonably intelligent men, upon reading it, would honestly differ as to its meaning. Further, the mere existence of a controversy as to the meaning of an insurance policy does not establish that such an ambiguity exists.
. . ."

*Taylor v. American Underwriters, Inc.* (1976), Ind.App., 352 N.E.2d 86, 89.

In his contention that the policy is ambiguous, Stockberger relies on *Glens Falls Insurance Company v. Gray* (5th Cir. 1967), 386 F.2d 520.[1] In *Glens,* the insured informed the insurance agent that he had acquired an inoperable automobile and that it was not to be included when he renewed coverage on his operable car. The court held that the newly acquired car did qualify for automatic coverage because the requirement of notice from acquisition was included under the "Premium" section of the policy, indicating that a premium adjustment, not a denial of coverage, was involved.

■ A careful reading of the policy at hand reveals that the automatic coverage provision is not ambiguous. The provision is included under the "Definition of Automobile" section, not a premium section. *Garrote v. Liberty Mutual Insurance Company* (5th Cir. 1974), 496 F.2d 1168. The definitional provision is not rendered ambiguous by its closing phrase which requires the insured to pay any additional premiums necessary from acquisition of a newly acquired automobile. *Garrote, supra.*

Construing the policy in its entirety, we look to the other provisions of the policy to ascertain the intent of the parties. "COVERAGE A—BODILY INJURY LIABILITY" and "COVERAGE B—PROPERTY DAMAGE LIABILITY" provide coverage for situations "arising out of the ownership, maintenance or use of the described automobile. . . ." "COVERAGE D— COMPREHENSIVE—EXCLUDING COLLISION" provides that the insurer will pay

---

1. Other cases cited by Stockberger are inapposite to this factual situation. In *Silverstein v. Liberty Mut. Ins. Co. et al.* (5th Cir. 1974), 505 F.2d 158, the court held that coverage was appropriate under the automatic provision due to the *unique facts* of the case, on the theory that the insured never owned or possessed more than one operable vehicle during any part of the policy period. Additionally, the court noted that the insurance agent had been aware of the second vehicle but told the insured that it did not need coverage. In *Hoffman v. Illinois Nat. Cas. Co.* (7th Cir. 1947), 159 F.2d 564, the requisite 30 days' notice from acquisition was given, though after the accident occurred. In *National Indem. Co. v. Giampapa* (1965), 65 Wash.2d 627, 399 P.2d 81, the date of acquisition was deemed immaterial because notice was not an issue under the terms of the policy.

for direct and accidental loss of or damage to the described vehicle in a variety of instances, including fire and theft. "PARKED CAR COVERAGE (COVERAGE D)" covers any damage by collision when the described automobile is legally parked.

■ We are unpersuaded by Stockberger's argument that the 1960 pickup did not become a "newly acquired automobile", for replacement purposes, until it was rendered operable. It is clear that the parties intended that coverage be provided in situations not limited to operation of the vehicle on the highway. Under the terms of the policy, mere possession of the 1960 truck invoked the mandatory notice of acquisition requirement. Stockberger failed to comply with the notification requirement and the automatic coverage is barred.

The trial court properly granted Meridian's motion for judgment on the evidence.

## II.

### Negligence of Broker

Stockberger's complaint against Clary alleged that Clary failed to aid, advise, or assist Stockberger in maintaining proper insurance coverage on all motor vehicles owned or possessed by Stockberger in 1974. Based on their prior dealings, he contends that Clary breached an implied contract to insure the 1960 pickup truck and was negligent; therefore, the trial court erred in granting Clary's motion for judgment on the evidence.

■ When considering a motion for judgment on the evidence under TR. 50(A) the trial court is required to consider only the evidence and the reasonable inferences most favorable to the nonmoving party. To sustain a judgment for a defendant on the evidence, the evidence must be without conflict and susceptible of but one inference in favor of the moving party. If there is any evidence or legitimate inference therefrom to support at least one of the plaintiff's allegations, or if reasonable persons might differ, the judgment on the evidence is improper. *Huff v. Travelers Indemnity Com-*

*pany* (1977), 266 Ind. 414, 363 N.E.2d 985; *Monarch Industrial Towel and Uniform Rental, Inc. v. Model Coverall Service, Inc.* (1978), Ind.App., 381 N.E.2d 1098.

Stockberger was 36 years old at the time of trial and testified that he had owned at least ten vehicles during his life. He had procured insurance on vehicles in the past, including transferring coverage from one automobile to another. At the time of the accident in 1974, Stockberger had four vehicles insured through Clary, including the 1963 truck. He also owned the 1960 truck and the 1952 truck which were not insured.

During cross-examination, Stockberger testified that everytime in the past when he had purchased insurance he had received a policy or notice that the vehicle was insured within a reasonable time after requesting coverage, and that he expected to receive notice. When he had transferred coverage in the past, he had received notice of the transfer within 30 days.

Stockberger testified that he requested Clary to transfer coverage from the 1963 pickup to the 1960 pickup during the conversation at the coffee shop in May, 1974. However, he provided Clary with no further information, including the tonnage of the truck, at that time. Stockberger was sure that he must have given Clary the serial numbers of the truck at a later time, but he further testified that he provided Clary with no other information. Stockberger knew that to insure the vehicle Clary was going to need additional items of information. Although they continued to casually meet at the coffee shop, nothing further was said to Clary by Stockberger regarding coverage on the 1960 truck.

Clary's version of the May, 1974, conversation differs. Clary testified that he mentioned to Stockberger that the truck should be insured, but that nothing further was discussed.

■ Generally, an agent representing several companies, as Clary did, is considered to be an insurance broker. The negligence of a broker as opposed to that of an agent is not imputed to the insurer.

*Automobile Underwriters, Inc. v. Hitch* (1976), Ind.App., 349 N.E.2d 271.

■ An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the principal a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance. 16 Appleman, *Insurance Law and Practice* § 8831 (1968); 3 G. Couch, *Cyclopedia of Insurance Law* § 25:1 (2d ed. 1964); 44 C.J.S. *Insurance* § 172 (1945); Annot., 64 A.L.R.3d 398 (1975). If the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of a duty imposed by contract. 16 Appleman, *Insurance Law and Practice* § 8841 (1968); 3 G. Couch, *Cyclopedia of Insurance Law* § 25:46 (2d ed. 1964).

■ The question of agency for the insured must be determined from all the facts and circumstances of the case, together with the conduct of the parties and the communications between them. 44 C.J.S. *Insurance* § 281 (1945).

The issue which is central to our analysis is whether, based on the past dealings between the parties, an implied contract to procure insurance arose from the conversation in the coffee shop.

■ In Indiana, an oral or written contract of insurance requires a meeting of the minds of the parties upon the following essential elements of a contract: (1) the subject of the insurance; (2) the risk or peril insured against; (3) the amount of coverage; (4) the limit and duration of the risk; and (5) the amount of the premium to be paid. *Farmers Mutuals Insurance Company v. Wolfe et al.* (1968), 142 Ind.App. 206, 233 N.E.2d 690. A contract of insurance is not binding if negotiations are incomplete in any material particular, or assent of either party is lacking. *Celina Mut. Casualty Co. v. Baldridge* (1937), 213 Ind. 198, 10 N.E.2d 904, 12 N.E.2d 258.

■ A contract to procure insurance can be implied based on past dealings between the parties even though the agent is given authority to ascertain some of the facts essential to the ultimate creation of the contract. *Hamacher v. Tumy* (1960), 222 Or. 341, 352 P.2d 493. *Cf. Western Assurance Company v. McAlpin* (1899), 23 Ind.App. 220, 55 N.E. 119 (enforceable contract of insurance arose out of agreement to renew an existing policy without more information.). The *Hamacher* court noted that, while some of the essential elements could be found by implication, the liability of the agent for failure to procure insurance obviously could not arise unless the agent had sufficiently definite directions from the principal to enable the agent to consummate the final insurance contract.

■ While an implied contract to procure or renew insurance may arise in certain situations based on prior dealings between the parties, there is a corresponding duty on the part of the insured to provide the agent or broker with the information necessary to implement the policy. An agent or broker is not liable when the insured's loss is due to the insured's own act or omission. 3 G. Couch, *Cyclopedia of Insurance Law* § 25:60 (2d ed. 1960). *See* 72 A.L.R.3d 747 (1976).

The threshold question is the pattern of conduct between Stockberger and Clary. Stockberger was aware that he had not provided Clary with specific information to effectuate a transfer. When Stockberger had transferred coverage previously on an automobile he had contacted Clary at his place of business several times to relay the necessary information. Although Stockberger expected to receive confirmation of the transfer, or notice of a premium adjustment, within a reasonable time, he did not inquire further when he did not receive notice. Stockberger did not consult with Clary again regarding the alleged transfer of coverage until after the accident in August, 1974, approximately three months after the casual conversation in the coffee shop.

■ Clearly there was no meeting of the minds upon the subject matter of the

insurance coverage according to Stockberger's testimony. Stockberger had the burden of establishing a pattern of conduct from which a contract could be implied. The record reveals that he failed to do so. It necessarily follows that Stockberger did not establish a breach of contract or breach of an ensuing duty by Clary.

The trial court did not err when it granted Clary's motion for judgment on the evidence as a matter of law.

Affirmed.

HOFFMAN, J., concurs.

GARRARD, P. J., concurs as to Meridian Mutual Insurance Company; and, concurs in result as to Harvey Clary.