**David Webb SEARCY, Appellant,**

v.

**J. P. MANGANHAS, M.D. and Donald Vandertoll, M.D., Appellee[s]. [*sic*]**

No. 3-580A156.

Court of Appeals of Indiana, Third District.

Jan. 28, 1981.

Rehearing Denied March 4, 1981.

Frank J. Galvin, Jr., Richard L. Kieser, Galvin & Galvin, Hammond, for appellant.

Jon F. Schmoll, Spangler, Jennings, Spangler & Dougherty, Merrillville, for appellee J. P. Mangahas, M.D.

David C. Jensen and Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, for appellee Donald Vandertoll, M.D.

STATON, Judge.

David Webb Searcy brought a medical malpractice action against Dr. J. P. Manganhas and Dr. Donald Vandertoll. At the completion of Searcy's presentation of evidence, the trial court removed the case from the jury's consideration by granting the physicians' joint motion for judgment on the evidence.

On appeal, Searcy raises three issues for our consideration:

(1) Did the trial court err in its granting of the motion for judgment on the evidence?

(2) Was the trial court's refusal to admit Searcy's testimony as to informed consent reversible error?

(3) Did the trial court err in its admission of evidence concerning Searcy's receipt of Social Security disability benefit payments?

We affirm.

## I.

### Disclosure Standard

In considering a motion for judgment on the evidence, the trial court must look only to the evidence and the reasonable inferences drawn therefrom most favorable to the nonmoving party. To sustain a TR. 50(A) judgment for a defendant, the evidence must be susceptible of but one inference in favor of the moving party and without conflict. Ind.Rules of Procedure, Trial Rule 50(A); *Stockberger v. Meridian Mut. Ins. Co.* (1979), Ind.App., 395 N.E.2d 1272.

If reasonable persons might differ or if there is any evidence or legitimate inference to support the plaintiff's allegations, a judgment on the evidence is improper. *Stockberger, supra; Huff v. Travelers Indemnity Company* (1977), 266 Ind. 414, 363 N.E.2d 985. Such a motion "may properly be granted only if there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof." *Ortho Pharmaceutical Corp. v.*

*Chapman* (1979), Ind.App., 388 N.E.2d 541, 544.

With this standard in mind, we must examine Searcy's contentions as related to the disclosure requirements for informed consent. In the Pre-Trial Order,[1] Searcy contended that Dr. Mangahas and Dr. Vandertoll had negligently failed to disclose material facts relevant to his treatment and that they thereby had failed to obtain his informed consent.[2] On appeal, he urges that a doctor's disclosure of information to the patient should contain all those facts which a reasonable person in a similar situation to the patient's would need in order to give an informed consent.

The crux of Searcy's argument focuses upon whether expert medical testimony is required to establish the extent of this disclosure. In explaining its granting of the judgment on the evidence, the trial court said:

"As I had indicated to you, you must have in my opinion expert testimony. I think that Doctor Blackstone's testimony, which is the only testimony of a medical nature before this Court, is insufficient. It's not there. I think that it would be error on behalf of this Court to allow this case to go to the jury. In my opinion the standard must be adequately presented and then as defense counsel indicated yesterday, that there must be someone that says, 'This is what the standard is, and this is how Doctors Mangahas and Vandertoll departed from that standard.' ...."

The Court in *Revord v. Russell* (1980), Ind.App., 401 N.E.2d 763, recently addressed this precise question in a strikingly similar situation. It said:

1. The Pre-Trial Order delineated the issues in the case and controlled the course of proceedings thereafter.

2. Searcy never contended that either the physician or the surgeon had been negligent in the care or treatment of his medical problems.

3. After refusing Dr. Mangahas' suggestion of medical management for his epigastric problems, Searcy was referred by the family practi-

"The general rule is that expert medical testimony is required to establish the content of such 'reasonable disclosure' unless the situation is clearly within the realm of laymen's comprehension as where the disclosure is so obvious that laymen could recognize the necessity of such disclosure. Annot., 52 A.L.R.3d 1084 (1973).

'There are obviously important roles for medical testimony in such cases, and some roles which only medical evidence can fill. Experts are ordinarily indispensable to identify and elucidate for the fact finder the risks of therapy and the consequences of leaving existing maladies untreated.... Save for relative infrequent instances where questions of this type are resolvable wholly within the realm of ordinary human knowledge and experience, the need for the expert is clear.'" (Citation omitted.).

*Revord, supra,* at 766, 767.

■ Searcy presented three medical witnesses, only one of whom was not a defendant, Dr. Blackstone. While Dr. Blackstone was a physician, he was neither a surgeon practicing in Munster, Indiana, as was Dr. Vandertoll, nor a family practitioner working in East Chicago, Indiana, as was Dr. Mangahas.[3] He was the Director of the Gastrointestinal Endoscopy Service at the University of Chicago. As such, he was not qualified to testify as to the standard practice of either a surgeon in Munster or a family practitioner in East Chicago in 1973. Even if he had been able to so testify, he did not present any testimony as to disclosure standards in these regions at that time.

■ The only testimony of this sort was given by Dr. Mangahas and Dr. Vandertoll. Both explained their disclosure procedures

tioner to Dr. Vandertoll for surgical repair of a hiatal hernia. The surgery was performed on July 24, 1973 and Searcy, after a period of recovery, returned to work. While at work, he broke his knee-cap, necessitating the use of crutches. He then developed a ventral hernia at the operative site. On February 20, 1974, he underwent surgery for the repair of a ventral hernia.

and stated that their professional practices in this regard conformed to the standard of care exercised by those in their profession similarly situated.[4]

There was no expert medical testimony, other than that of Dr. Blackstone, offered by Searcy to establish what risks Dr. Mangahas and Dr. Vandertoll had a duty to disclose. We agree with the trial court's assessment of the insufficiency of Dr. Blackstone's testimony for this purpose. As such, Searcy's evidence lacked at least one essential element necessary to establish a prima facie case. The trial court, therefore, properly granted the motion for judgment on the evidence in the physicians' favor.

## II.

### Admission of Evidence

During the course of Searcy's testimony, he was not allowed to answer a question concerning whether or not he would have undertaken the operation had he been adequately informed of the risks. On appeal, he appears to argue, without any substantiation, that the trial court erred in excluding this evidence.

■ It is well established that the trial court has broad discretion in the determination of the admissibility of evidence. Before an error in the rejection of evidence may justify a reversal, the error must be of a character to substantially affect the rights of the parties or it must relate to a material matter. *Lovko v. Lovko* (1978), Ind.App., 384 N.E.2d 166. Such is not the case here.

■ Whether or not Searcy would have acted differently given another set of circumstances is of little import. His proffered hindsight testimony has no effect upon the propriety of the trial court's granting of the motion for judgment on the evidence. Searcy's excluded testimony would not have remedied the fatal defect—the lack of expert medical testimony by

which to establish a standard of disclosure—in his case. As such, any error was harmless and not subject to reversal. TR. 61.

## III.

### Collateral Payments

■ Searcy finally argues that testimony as to a collateral source of income was not admissible on the question of damages. His argument is specious in that he initiated this line of questioning and specifically drew the jury's attention to the results of a hearing held to establish Searcy's eligibility for Social Security disability benefit payments.

Moreover, we note that the collateral source rule is meaningful only as it applies to a jury's consideration of damages and liability. *Evans v. Breeden* (1975), 164 Ind. App. 558, 330 N.E.2d 116. Because the jury was removed from its decision-making capacity, the prejudicial effect, if any, of such testimony is irrelevant.

Judgment affirmed.

HOFFMAN, P. J., concurs.

GARRARD, J., concurs in part and dissents in part with opinion.

GARRARD, Judge, concurring in part and dissenting in part.

I concur in affirming the judgment on the evidence granted in favor of Dr. Manganhas since there was no evidence adduced as to the proper medical standards for disclosure applicable to his role in the treatment of Mr. Searcy.

With respect to Dr. Vandertoll, however, I must disagree even though no *other* expert medical witness testified as to the proper standard of care. Dr. Vandertoll was, himself, questioned extensively concerning the appropriate standards for disclosure in the community at the time. He testified that he was unfamiliar with them. Admittedly, his further testimony was somewhat ambiguous and was possibly sub-

4. Searcy attempted to show Dr. Vandertoll deviated from his practices as to informed consent by talking with him after allegedly receiving a pre-op shot. The evidence as to the relative times of the administration of the pre-operative medication and of Dr. Vandertoll's visit with Searcy was conflicting and the sequence of events was never established.

ject to objection on its responsiveness. The reason for this was that counsel would inquire about some aspect of the community standard and the doctor would typically respond with what he personally did in that circumstance. Nevertheless, the jury could have considered this a testimonial mannerism and that the doctor's evidence did disclose the appropriate standard. While Dr. Vandertoll's testimony thus, in effect, attempted to establish at one and the same time the appropriate standard and his compliance with it, there remained a question for the jury. The question existed because Mr. Searcy, contradicted Vandertoll's account of what and when he was told. I would therefore reverse the judgment as to Dr. Vandertoll and remand for a new trial.