SHARP, Judge.
Dixie Insurance Company appeals from a final summary judgment which determined John Detamore was entitled to $20,000.00 uninsured motorist coverage under Barbara’s (his wife’s) insurance policy. The parties agree that the sole issue in this case is whether an inoperable MG purchased by Barbara constitutes an “additional” or “replacement” car under the policy, permitting John to “stack” the uninsured motorist coverage as to it with uninsured motorist coverage specifically provided on a 1971 Oldsmobile insured under the same policy. We affirm.
The record established that Barbara procured a policy of insurance from Dixie which was in effect from March 12, 1985 through March 12, 1986. It specifically insured the Oldsmobile and a 1973 Ford Courier pickup truck. The policy also provided coverage for:
(a) Any car described in the Declarations and any private passenger car or utility car you replace it with. If you wish Car Damage Coverage to apply to the replacing car you must notify us within the 30 days of its acquisition.
(b) Any additional private passenger car or utility car which you acquire ownership during the policy period. You must however notify us within 30 days of its acquisition.
In July of 1986, Barbara found a 1978 MG, which required repairs and was inoperable. She paid the owner, Paul Messick, $50.00 for it, but left it at Messick’s home in Brooksville. On August 20, 1985, the Detamores had the MG towed from Brooksville to their home in Coleman. Barbara took the MG to a mechanic, who promised her it would be fixed and running by September 4, 1985.
With the expectation of having the MG in running condition shortly, Barbara sold her Ford pickup on September 3, 1985. On that same day she called her insurance agent through whom she had obtained the Dixie policy. She told them the Ford pickup had been sold and that as soon as the MG was repaired, it should be put on the policy to replace the Ford. She instructed them not to put the MG on the policy until it was operable.
On September 10, 1985, John was seriously injured while riding his motorcycle. Barbara picked up the MG from the mechanic on September 18, 1985, although the exact date it became operable was not established. On September 26,1985, Barbara received the title certificate for the MG, and she called the insurance agent to add the MG to the policy as a specifically insured automobile.
Based on these facts, and the language of the Dixie policy, the trial judge was correct in concluding the MG was covered under the policy as an “additional” vehicle.[1] The insuring clause in the Dixie policy for “additional” cars was “automatic.” [2] A new car is covered as an insured vehicle, so long as it is obtained during the policy period, and so long as the accident for which coverage is sought occurs either during the first thirty days after the ownership is acquired, or longer, if the notice provision is complied with.[3] In applying the automatic coverage provision, it does not matter what Barbara told the insurance agent, or whether she fully understood her rights under this provision.
Dixie argues that the Detamores are not entitled to coverage because the thirty-day notice period began to run in July of 1985 when Barbara paid for the MG. That would make Barbara’s telephone call to the agent on September 3, 1985, as well as the accident, well beyond *1392 the thirty-day period. The Detamores argue the MG was not “acquired” until they took possession of it on August 20, 1985 and therefore it was automatically covered regardless of notice, since the accident occurred within the thirty-day grace period. In any event, Barbara’s telephone conversation on September 3rd met the notice requirements.
The resolution of this dispute turns on an interpretation of Dixie’s “automatic” insurance clause for additional cars. It provides that coverage for an additional car in which the insured acquires “ownership” is automatic, provided notice is given within thirty days of its “acquisition.”
Such clauses are standard in automobile liability policies. They are designed and intended to provide coverage at the earliest time an insured may need protection. Since they are intended for the benefit of the insured, they are given a liberal construction.[4]
The acquisition of the ownership of a new car may be found to have occurred at various stages, depending on the facts and circumstances of the case.[5] However, delivery of the vehicle to the buyer is generally the controlling factor,[6] although obtaining the title certificate may also be significant, if it occurs prior to delivery.[7]
Some courts have ruled that acquisition of ownership under an automatic coverage provision is further postponed by the car’s inoperability.[8] However, we do not think the questions of whether the MG was running and when it became operable are relevant in this case.[9]
Based on this record, ownership of the MG was acquired by the Detamores on August 20th, when they took possession of it, having paid the purchase price. At that point they began exercising true ownership rights over the MG, including the right to control and possess it. The later arrival of the title certificate was immaterial to the transfer of real ownership.[10] Since the accident occurred within thirty days after delivery, and since notice was also given to Dixie about the MG’s acquisition within the grace period, it became an insured vehicle under Dixie's policy. John Detamore’s right to uninsured motorist coverage for the MG was automatic, as if it had been specifically insured under the policy.
AFFIRMED.
UPCHURCH, C.J., and HARRIS, C.M., Associate Judge, concur.

.The policy may also have covered the MG as the Ford’s "replacement" vehicle, although Barbara's intent not to replace it until the MG was repaired was clearly stated in her deposition, and there was no contradictory evidence presented. Whether or not a vehicle is to replace another is largely a question of fact. 12 Couch on Insurance 2d (rev. ed) § 45:197.

. Id. at § 45:184.

. Id. at § 45:205.

. Id. at § 45:184.

. "Ownership" is a collection of rights to use and enjoy property. Black’s Law Dictionary, 997 (5th ed. 1979).

. 12 Couch on Insurance 2d § 45:194; see Lowe v. State Farm Mut. Auto. Ins. Co., 420 So.2d 318 (Fla. 5th DCA 1982); see Stockberger v. Meridian Mut. Ins. Co., 182 Ind.App. 566, 395 N.E.2d 1272 (3d Dist.1979); Matlock v. Gov't Employees Ins. Co., 546 P.2d 903 (Utah 1976).

. 12 Couch on Insurance 2d § 45:193; 45:187; see Wisbey v. Nationwide Mut. Ins. Co., 264 Or. 600, 507 P.2d 17 (1973).

. See Glens Falls Ins. Co. v. Gray, 386 F.2d 520 (5th Cir.1967).

. 12 Couch on Insurance § 45:201, see Illinois Natl Ins. Co. v. Trainer, 1 Ill.App.3d 34, 272 N.E.2d 58 (4th Dist.1971); Stockberger v. Meridian Mut. Ins. Co., 182 Ind.App. 566, 395 N.E.2d 1272 (3d Dist.1979); compare Bedgood v. Hartford Accident & Indem. Co., 384 So.2d 1363 (Fla. 1st DCA 1980) (policy defined "automobile" as a vehicle required to be registered).

. 12 Couch on Insurance 2d § 45:202.