884 F.2d 1392
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joselito MILLAN, Plaintiff-Appellee Cross-Appellant,
v.
YORKSHIRE INSURANCE CO., LTD. et al., Defendant-Appellant
Cross-Appellee.
 Nos. 88-5788, 88-5840.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1989.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and THOMAS G. HULL, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant, Virginia Hibbs, appeals from the denial of her motions for judgment notwithstanding the verdict or a new trial in this action to enforce an equine mortality insurance policy brought by plaintiff Joselito Millan. Millan had alleged that Hibbs had been negligent in issuing an "actual value" policy instead of a "stated value" policy. Because we believe that the evidence did not present an issue for the jury, we reverse.
 
 
 2
 Millan is a neurosurgeon who became involved in the thoroughbred horse business. As Millan purchased more expensive horses, he secured insurance against their death. Prior to entering into the policy at issue here, Millan's equine insurance was "actual value" insurance issued by The Whiting Insurance Company.
 
 
 3
 After moving his horses to Charlestown, Indiana, Millan secured equine mortality insurance from Hibbs, an insurance agent who had previously written insurance for Millan, but who was not his sole agent. In requesting equine insurance, Millan gave Hibbs the declarations page of his previous Whiting policy, along with a list of his horses and their value. The declarations page of the Whiting policy indicates that it was an "actual value" policy. Millan did not specifically request that Hibbs write a "stated value" policy.
 
 
 4
 Hibbs subsequently obtained an equine mortality insurance policy for Millan. This policy was issued by Yorkshire Insurance Company Limited, F. Bolton & Co., Limited and Frizzell International Limited ("the Company"). The language of the policy clearly indicated that it was an "actual value" policy.
 
 
 5
 On January 28, 1986, four months after Millan obtained a copy of the policy but before he had read its language, a fire broke out in Millan's stables, and a number of horses were lost. The scheduled value of the horses lost in the fire was $597.000. After the fire, Millan discovered that the policy covered only the horses' actual value.
 
 
 6
 Prior to the fire, Millan had offered several horses for sale at auction, including two horses with a total stated value of $350,000; however, after receiving unsatisfactory bids, Millan was forced to buy them back for $80,000. Thus, the actual value of the horses had obviously fallen far below the stated value. Moreover, the very act of placing the horses up for auction had depressed their apparent market value.
 
 
 7
 Millan filed an insurance claim, which the company offered to settle for the actual value of the horses. When Millan filed suit, the company settled for $277,000 and trial proceeded against Hibbs.[1] At the conclusion of trial, the jury returned a verdict against Hibbs for $230,000.
 
 
 8
 As the events complained of took place in Indiana, the district court applied Indiana law in this diversity case. Under Indiana law, when considering a motion for "judgment on the evidence,
 
 
 9
 the trial court is required to consider only the evidence and the reasonable inferences most favorable to the nonmoving party. To sustain a judgment for a defendant on the evidence, the evidence must be without conflict and susceptible of but one inference in favor of the moving party. If there is any evidence or legitimate inference therefrom to support at least one of the plaintiff's allegations, or if reasonable persons might differ, the judgment on the evidence is improper.
 
 
 10
 Stockberger v. Meridian Mutual Insurance Company, 395 N.E.2d 1272, 1278 (Ind.Ct.App.1979) (citations omitted). Stockberger is also instructive concerning the duty of an insurance agent according to Indiana law:
 
 
 11
 An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the principal a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance. If the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of a duty imposed by contract.
 
 
 12
 395 N.E.2d at 1279 (citations omitted).
 
 
 13
 Stockberger had purchased a 1960 and a 1952 pick-up truck, neither of which were operable, licensed or insured. Several months later, Stockberger obtained a policy with Meridian to renew coverage on a third, 1963 pick-up. Three months later, in a coffee shop, Stockberger told the Meridian agent that the 1960 pick-up was being repaired. Stockberger testified that he requested that the agent transfer coverage from the 1963 truck to the 1960 truck; the agent testified that, although he had advised such a transfer, the conversation ended there. Subsequently, the 1960 truck was involved in an accident, for which Meridian denied coverage. At the time of the accident, Stockberger had three other vehicles insured through this particular agent, but not all were insured by Meridian.
 
 
 14
 After disposing of an issue involving an automatic coverage provision of the policy, the Indiana Court of Appeals discussed the issue of "whether, based on the past dealings between the parties, an implied contract to procure insurance arose from the conversation in the coffee shop:"
 
 
 15
 In Indiana, an oral or written contract of insurance requires a meeting of the minds of the parties upon the following essential elements of a contract: (1) the subject of the insurance; (2) the risk or peril insured against; (3) the amount of coverage; (4) the limit and duration of the risk; and (5) the amount of the premium to be paid. A contract of insurance is not binding if negotiations are incomplete in any material particular, or assent of either party is lacking.
 
 
 16
 A contract to procure insurance can be implied based on past dealings between the parties even though the agent is given authority to ascertain some of the facts essential to the ultimate creation of the contract. Hamacher v. Tumy; (1960), 222 Or. 341, 352 P.2d 493. The Hamacher court noted that, while some of the essential elements could be found by implication, the liability of the agent for failure to procure insurance obviously could not arise unless the agent had sufficiently definite directions from the principal to enable the agent to consummate the final insurance contract.
 
 
 17
 While an implied contract to procure or renew insurance may arise in certain situations based on prior dealings between the parties, there is a corresponding duty on the part of the insured to provide the agent or broker with the information necessary to implement the policy. An agent or broker is not liable when the insured's loss is due to the insured's own act or omission.
 
 
 18
 395 N.E.2d at 1279 (citations omitted).
 
 
 19
 Based on these principles, we are of the view that Millan failed to establish a prima facie case of negligence. Millan did not specifically request "stated value" insurance; indeed, the Whiting declarations page which Millan handed to Hibbs indicated that his previous policy was an "actual value" policy. Moreover, once the policy was issued, Millan failed to inform himself of its contents, when a simple reading of its language would have informed him that it covered only the actual value of the horses.
 
 
 20
 The nub of Millan's claim is that Hibbs had a duty to give Millan information about "stated value" insurance--indeed, that Hibbs should have counselled him concerning his insurance needs. However, this duty does not exist in Indiana absent special circumstances, such as those detailed in United Farm Bureau Mutual Insurance Company v. Cook, 463 N.E.2d 522 (Ind.Ct.App.1984) where the insured and the agent had a long-standing, exclusive relationship in which the agent actually acted as an advisor. Here, Millan and Hibbs had previous dealings; however, Hibbs was not the sole agent used by Millan, nor did she purport to counsel Millan.
 
 
 21
 Accordingly, the judgment is reversed.
 
 
 
 *
 The Honorable Thomas G. Hull, Chief U.S. District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Another defendant, Marnitz & Associates, for whom Hibbs was an agent, was granted summary judgment