MASSACHUSETTS CASUALTY INSURANCE COMPANY, Plaintiff–Appellee,

v.

Billie J. ROE, now known as Billie J. Chisman, Defendant–Appellant.

Nos. 95–2124, 95–2402.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1996.

Decided Aug. 14, 1996.

Rehearing Denied Sept. 26, 1996.

---

Jeffrey A. Doty (argued), Kightlinger & Gray, Indianapolis, IN, for Plaintiff–Appellee.

C. Richard Marshall (argued), Columbus, IN, Shari E. Kinnaird, Columbus, IN, for Defendant–Appellant in No. 95–2124.

C. Richard Marshall (argued), Columbus, IN, for Defendant–Appellant in No. 95–2402.

Before POSNER, Chief Judge, and DIANE P. WOOD and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

When Billie J. Roe decided to acquire some long-term disability insurance, she was not as careful as she now knows she should have been. This case is about the consequences of various omissions and misstatements she made during a six month period in connection with a long-term disability policy she applied for and briefly had with Massachusetts Casualty Insurance Company (MCIC). The district court thought Roe's actions required summary judgment for MCIC, which it entered, along with an order under Rule 54(b) that allowed this appeal while claims against other parties remained pending before the district court. Because we conclude that the district court did not err on the law and the undisputed facts show that MCIC was entitled to relief, we affirm.

On Saturday, June 1, 1991, Roe met with her cousin, Brent Sewell, an agent for MCIC, to discuss long-term disability insurance. During the conversation, she mentioned to Sewell that she had long-term disability insurance through her employer, Aldi, but that she did not know any details about it. Sewell promised her that he would look into that, and that he would fill in the part of the MCIC application form that inquired about other disability policies of the applicant. At the close of that meeting, Roe signed the application for an MCIC policy, but she told Sewell that she still needed to think about it, and she asked him to leave the application date blank. On June 6, apparently having thought it over, Roe contacted Sewell and told him to move forward with the application.

Sewell never asked Roe any more questions about her group long term disability policy with Aldi, nor apparently did he follow up with Aldi directly. Sewell's manager, Thomas Dyer, told Sewell that MCIC would not process the application without information about Roe's other long-term disability insurance. Instead of finding out the correct information, however, Dyer just wrote in the words "no other" in the application that Roe

had signed earlier and shipped it off to MCIC. In late September or early October 1991, MCIC, through Sewell, issued Roe a policy dated July 23, 1991. He promptly mailed this policy to her. At the same time, he telephoned her and asked her to pay the premiums due for July, August, and September. Roe objected to payments that seemed retroactive to her and asked for a new policy dated October 1, 1991. Sewell agreed to ask MCIC for such a policy. Roe paid monthly insurance premiums at the beginning of October, November, and December 1991 (and thereafter, until this dispute arose).

Even though she was paying premiums regularly, Roe did not have in her possession the new October 1 insurance policy. (She may have retained the defunct July 23 policy; the record is unclear, except for her statement that MCIC never requested its return.) Problems arose on December 3, 1991, when Roe hurt her back at work. At that time, she had still not received the October 1 policy from MCIC. She called Sewell to let him know what had happened. Sewell had received the new policy at his Indianapolis office on November 8, 1991, but he had never gotten around to delivering it to Roe. When she called, they arranged to meet in Indianapolis on December 5, so that Sewell could give her the new policy. Attached to the policy was a "Statement of Health to Massachusetts Casualty Insurance Company," which required the prospective policy holder to tell MCIC whether she was in the same physical condition now as she had been at the time of her original application. Although she could have truthfully attested to an unchanged condition if Sewell had delivered the policy to her at any time between November 8 and December 3, by the time she actually got the policy matters had obviously changed. At Sewell's suggestion, Roe back-dated the "Statement of Health" to December 2 and signed it.

Roe continued to make payments on a monthly basis. Around May 4, 1992, she submitted a claim to MCIC, in which she alleged that she suffered a permanently disabling injury in an accident at Aldi on December 3, 1991. In response to a question on the proof of claim form, she truthfully disclosed that she had other insurance, with the notation "Prudential—group through Aldi 60 percent—180 day wait." MCIC approved the claim and began paying her $1,500 per month in disability benefits on June 23, 1992. (An initial check for $1,700 covered the period between May 31, 1992, and July 3, 1992; the delay was due to a clause in the policy under which benefits were not effective until 180 days after the event.) MCIC continued to pay benefits until December 29, 1992, when it wrote to Roe canceling her benefits due to incorrect information in her application about other insurance. Altogether, Roe received $9,200 in benefits from MCIC, instead of the $90,000 she would have gotten if the $1,500 per month payments had continued for the policy period of five years.

MCIC filed this lawsuit on September 29, 1993, seeking rescission of the policy, the recovery of its $9,200 in benefits, and a declaratory judgment that the policy did not cover Roe's injuries. Roe answered and counterclaimed for full benefits under the policy. She also filed a third-party claim against Sewell, Dyer, and Sun Life of Canada (MCIC's parent company), seeking damages based on errors in the application process. MCIC filed a motion for summary judgment based on two grounds: material misrepresentations in the insurance application (i.e. the statement of "no other" disability insurance) and the back-dated Statement of Health. The district court granted MCIC's motion based on the back-dated Statement of Health, relying on the Indiana Supreme Court's decision in *Rushville National Bank v. State Life Insurance Co.*, 210 Ind. 492, 1 N.E.2d 445 (1936). Roe appealed—once before and once in a timely manner after the district court entered its Rule 54(b) order, which explains the two docket numbers.

Roe has presented nine separate issues to this Court, although she is not alone in inundating us with material. All together, the briefs plus appendices weigh in at 245 pages. In essence, however, she has two principal claims: whether she should be held responsible for the erroneous statement about other insurance in the June application; and whether Sewell and Dyer were acting as MCIC's agents, and thus whether MCIC is

either estopped from complaining about their actions, or it waived any errors they may have made. She also asserts that MCIC's acceptance of the October to December premiums precluded it from canceling the policy on grounds related to the application, but in light of the ground on which we decide this case, we have no need to reach that issue.

Roe argues, and we accept for purposes of reviewing this summary judgment, that she never knew that her application was submitted to MCIC with the words "no other" written in response to the question about other insurance and that she never learned in any other way that this had happened. She never read the July 23 policy, because she told Sewell that she wanted to have a new policy issued, and she never saw the October 1 policy until after her accident. Furthermore, it is undisputed that she did disclose the existence of the Aldi policy when she submitted her claim the following May for the December 3, 1991, injury. Viewing the facts in the light most favorable to *Roe*, *American Intern. Adjustment Co. v. Galvin*, 86 F.3d 1455, 1459 (7th Cir.1996), we agree that a reasonable jury could find that she had no personal knowledge of the erroneous statement on the application.

■ That does not end the matter for Roe, however, because we must still decide whether Sewell and Dyer were her agents, MCIC's agents, or no one's agents. If they were her agents, then she would still be responsible for the statement. *Pollas v. Hardware Wholesalers, Inc.*, 663 N.E.2d 1188, 1190 (Ind.Ct.App.1996); *Clark v. Millikin Mortgage Co.*, 495 N.E.2d 544, 547 (Ind. Ct.App.1986). If, on the other hand, they were not, then there is no ground on which to impute their misconduct to her. *Allegheny Mutual Casualty Co. v. Franklin*, 513 N.E.2d 658, 659 (Ind.Ct.App.1987). In its recent decision in *Benante v. United Pacific Life Ins. Co.*, 659 N.E.2d 545 (Ind.1995), the Supreme Court of Indiana emphasized that the determination whether or not an insurance salesman is an agent of a particular insurance company is a question of fact. The court agreed with the Indiana Court of Appeals that the general rule is that an insurance agent who represents several companies

is a broker, and is considered the agent of the proposed insured when the agent undertakes to procure insurance. *Id.* at 547 (citing *Stockberger v. Meridian Mut. Ins. Co.*, 182 Ind.App. 566, 395 N.E.2d 1272 (1979)). Giving Roe the benefit of the doubt, we are willing to find that the record does not clearly show whether Sewell was acting as her agent or as an agent of MCIC when he filled in the words "no other," and thus that summary judgment on the theory of a false application would have been inappropriate.

■ We need not decide whether Sewell and Dyer were acting as MCIC's agents in general, because such a finding would not change our ultimate conclusion on MCIC's alternate ground: Roe's admittedly dishonest decision to back-date the Statement of Health, made months before she submitted any claim. The undisputed facts show that she was required to complete the Statement of Health upon delivery of the policy. Even if she should have received the policy before December 5, the delay has nothing to do with the honesty of her response on the form. As the Indiana Supreme Court held in Rushville, and as this Court reiterated when it applied Indiana law to similar facts in *Northern Assurance Co. of America v. Summers*, 17 F.3d 956, 964 (7th Cir.1994), Roe's misrepresentation voided the policy ab initio. See also *American Family Mut. Ins. Co. v. Kivela*, 408 N.E.2d 805, 810 (Ind.Ct.App.1980). She therefore is not entitled to keep the $9,200 she received under the policy, and MCIC is entitled to rescind it (paying back the premium payments it received). Sewell was clearly not acting as MCIC's agent on December 5, when he advised Roe to back-date the Statement of Health and thus to conceal the injury she had received on December 3.

Roe's only answer to this outcome is to point out that this problem would never have arisen if Sewell had properly delivered the new policy to her as soon as he received it. That may well be true, and it is a matter that she is entitled to pursue in her action against Sewell and Dyer in the district court. Insurance companies, however, demand honesty from their customers. As far as this record shows, Roe never contemplated fully disclosing both the unimpaired state of her health

from November 8 through December 3, and the timing of the accident. We do not know how MCIC would have reacted to such a full disclosure, but it is enough for present purposes to hold that Sewell's delay did not give Roe a license to misrepresent the facts to MCIC.

We have considered all the other points Roe has raised and find nothing that changes the outcome of this case. The judgment of the district court is therefore

AFFIRMED.