**Billie J. ROE (now Chisman), Plaintiff–Appellant,**

v.

**Brent A. SEWELL, Thomas R. Dyer, and Sun Life of Canada, d/b/a Sun Financial Group, Defendants–Appellees.**

No. 96–2439.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 9, 1996.*

Decided Oct. 28, 1997.

---

\* This successive appeal has been assigned to the original panel under Internal Operating Proce-

dure 6(b). The panel heard oral argument on the initial appeal, *Massachusetts Cas. Ins. Co. v. Roe*, 93 F.3d 323 (7th Cir.1996), and is unanimously of the view that a second oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a); Cir. R. 34(f).

C. Richard Marshall (submitted), Shari E. Kinnaird, Columbus, IN, for Plaintiff–Appellant.

Edward W. Harris, III, Debra McVicker Lynch, Sommer & Barnard, Indianapolis, IN, for Defendant–Appellee Brent A. Sewell.

Barbara Malone, Richard E. Aikman, Jr., Stephen J. Peters, Richard P. Winegardner, Stewart & Irwin, Indianapolis, IN, for Defendant–Appellee Thomas R. Dyer.

Robert P. Johnstone, Jan M. Carroll, Barnes & Thornburg, Indianapolis, IN, for Defendant–Appellee Sun Life Canada dba Sun Financial Group.

Before POSNER, Chief Judge, and DIANE P. WOOD and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Billie J. Roe, now Billie Chisman, has spent a number of years trying to secure long-term disability benefits under an insurance policy she briefly held from the Massachusetts Casualty Insurance Company (MCIC). In the first appeal in this case, *Massachusetts Casualty Insurance Co. v. Roe*, 93 F.3d 323 (7th Cir.1996), we affirmed the district court's judgment for MCIC, which reached us on certification under Fed. R.Civ.P. 54(b). While that appeal was pending, proceedings continued in the district court on Roe's claims against third-party defendants Brent Sewell and Thomas Dyer (two insurance agents) and Sun Life of Canada (MCIC's parent corporation.) Once again, Roe failed to convince the court that she was entitled to a trial. The district court granted summary judgment to all three third-party defendants, bringing this litigation to a close. We agree that Sun and Dyer are entitled to judgment as a matter of law, but we find that Roe has alleged enough under Indiana law to proceed with her case against Sewell.

Because we have already described the facts in some detail in *Massachusetts Casualty*, we review here only those that are necessary for the present case. We recount them, as we must, from the standpoint most favorable to Roe, recognizing that it is entirely possible that a finder of fact might not see things this way. Brent Sewell was an insurance agent authorized to sell insurance policies for MCIC, for Sun, and for other companies. Sewell worked in an office managed by Thomas Dyer. Roe herself had been an insurance agent for a period of time, but she was working as a store manager for the grocery chain Aldi, Inc., by the time the events in this case took place. In early June 1991, Roe met with Sewell to discuss her interest in obtaining long-term disability insurance. Sewell gave her an application for an MCIC disability policy. Roe filled out parts of it, and Sewell completed other parts with her help.

Question 6 of the application form specifically asked the applicant to "describe all

disability coverage in force and any pending applications with all companies." Roe informed Sewell that she had long-term disability insurance through Aldi, but that she did not know any of the details about that coverage. Sewell recorded on the form that she. had short-term disability insurance through her employer, Aldi, but at the time he left the rest of that question blank. Sewell promised Roe that he would investigate Aldi's long-term coverage for her and complete question 6 later. At the close of that meeting, Roe signed the MCIC application, despite this omission. She placed her signature just below a five-paragraph statement on the last page of the application, which began as follows:

> To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II (Medical Exam), if any, of the Application are true, complete, and correctly stated. They are offered to Massachusetts Casualty Insurance Company as the basis for any insurance issued on this Application. I understand that any false statements may result in the loss of coverage under the policy. . . .

Because she had not yet decided whether to apply for the MCIC policy, Roe also asked Sewell to leave the date blank on the application. A few days later, she called him and told him to proceed.

Sewell never contacted Aldi or otherwise found out about Roe's other long-term disability insurance. Noting the problem, Dyer told Sewell that he had to obtain the missing information or return the application to Roe. Sewell responded by disappearing into his office for a few moments and returning with the news that he had just talked with Roe and had found out what he needed to know. As Dyer and Sewell reviewed the entire application, they reached question 6 and Dyer asked whether Roe had any other coverage. Sewell replied (based on his alleged telephone conversation) that she did not; Dyer wrote "No Other" on the application form. The agents forwarded the application to MCIC on June 24, 1991.

In late September or early October 1991, MCIC issued a long-term disability policy for Roe with an effective date of July 23, 1991. Sewell promptly mailed this policy to Roe, and also informed her by telephone that she would need to pay the premiums due for July, August, and September. Roe received her copy of this policy but objected to the idea of paying premiums "retroactively." She accordingly asked Sewell to have a new policy issued for her with an October 1, 1991 effective date. He agreed to ask MCIC to do this, which it did. Without the new policy in hand, Roe began paying her monthly premiums in October. Meanwhile, MCIC mailed the policy to Sewell, but it languished in Sewell's office between November 8, 1991, the date when he received it, and December 3, 1991, the date when Roe called to let him know she had suffered an injury that day at work. Two days later, Sewell met with Roe and personally delivered the policy (with attached application) and a Statement of Health form that asked Roe to certify that her health had not changed since she completed the application. At Sewell's suggestion, Roe falsely so certified, thereby concealing the fact that two days earlier her health had taken a significant change for the worse.

At no time after her initial June meeting with Sewell did Roe read the completed application: not before Sewell and Dyer submitted it to MCIC, not when the first (rejected) policy reached her, and not even on December 5, when she received the reissued October 1 policy. Indeed, when she submitted her claim to MCIC for long-term disability benefits, she truthfully disclosed that she had other long-term insurance through Aldi. MCIC paid benefits to her from mid–1992 until the end of the year, when it discovered the incorrect "No Other" statement on her application. In *Massachusetts Casualty*, we affirmed the district court's decisions allowing MCIC to rescind the policy and recover the money it had paid to Roe, and declaring that the policy did not cover Roe's injuries. Those decisions necessarily rejected Roe's claim that she was entitled to benefits from MCIC under the policy.

This appeal covers the third-party claims that Roe filed alleging that Sewell, Dyer, and

Sun (as well as MCIC) had "carelessly and negligently" failed to do what they had promised, namely, to determine what other long-term disability insurance Roe had and accurately to report this information on her application. She claimed that Sewell and Dyer had acted as agents of MCIC and Sun, and that in their capacity as agents they had represented on the form that Roe had "no other" benefits. Under these circumstances, she argued, MCIC and Sun were responsible for the negligent actions of their agents. Roe denied that Sewell ever called her for any information about her long-term disability coverage. Jurisdiction for Roe's third-party claims was based on the district court's supplemental jurisdiction, 28 U.S.C. § 1367.

The district court saw the question as a straightforward one: "if an individual applying for insurance fails to correct an erroneous answer on her application, may she later maintain an action to recover damages caused by that misstatement?" Relying mainly on the Indiana Supreme Court's decision in *Metropolitan Life Insurance Co. v. Alterovitz*, 214 Ind. 186, 14 N.E.2d 570 (1938), the court answered its question in the negative. Under *Alterovitz*, an insured person who warrants that the answers on his application are full, true, and complete, has a duty to make sure that any blanks later filled in are answered accurately. If erroneous information on which the insurance company relies is later inserted, the company has no duty to pay benefits under the policy. See generally *id.* 14 N.E.2d at 577. The district court rejected Roe's argument that *Alterovitz* had been "softened" by a later line of Indiana cases including *Anderson Mattress Co., Inc. v. First State Insurance Co.*, 617 N.E.2d 932 (Ind.Ct.App.1993).

Before this court, Roe now argues that *Alterovitz* should not control because it involved the contractual relationship between an insurance company and its insured, while her case focuses on the behavior of the agents Sewell and Dyer, who tortiously failed to exercise due care when they undertook to complete the application for her. In her view, Sun (and MCIC, she would have argued), should also be liable in tort under a *respondeat superior* theory. Her brief goes

on at some length detailing the damages (both direct and consequential) she suffered as a result of the misconduct of Sewell and Dyer. Were we to agree with her on the basic case, she also urges us to reinstate her request for punitive damages. Finally, responding to one of the third-party defendants' alternative arguments, she argues that her claims against them were not barred by Indiana's two-year statute of limitations for tort claims.

■ We agree with Roe that it is important to look to the relationship between her and each of the three third-party defendants now before us. We begin with Sun, the parent corporation of MCIC. Roe's theory against Sun is that there was no distinction between Sun and MCIC, at least for purposes of this transaction and the office in which Sewell worked. Both MCIC and Sun, in her view, are liable to her under principles of *respondeat superior* for the tortious acts of their agents, Sewell and Dyer. Sun responds with two points, both of which we find compelling. First, it argues that our earlier decision establishes conclusively that, because of her misrepresentation on the Statement of Health, MCIC is not required to pay Roe under the policy. Sun then notes that under no circumstances could its liability exceed MCIC's, since it is involved in this case only as MCIC's parent. Thus, the law of the case requires the conclusion that the misrepresentation on the Statement of Health also absolves Sun of liability. In the alternative, Sun argues that Roe is mistaken to believe that she can reach the parent corporation by piercing the corporate veil from MCIC to Sun.

■ In our earlier decision, we considered and rejected Roe's argument that Sewell was acting as MCIC's agent at the time he advised Roe to backdate the Statement of Health. That finding alone disposes of her claim against Sun. Whatever the circumstances of the initial application, neither MCIC nor Sun can be held responsible for Sewell's actions when he delivered the policy to Roe on December 5. Furthermore, even assuming for the sake of argument that MCIC could be liable, it does not follow that its parent corporation Sun would also be

liable. This is true whether the suit is based on contract or in tort; it follows from the fact that a shareholder—even a single shareholder—is normally not liable for the torts of the corporation whose shares it holds. See, *e.g.*, *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). See also Ind.Code Ann. § 23–1–26–3 (West 1997). Roe argues that Sewell and Dyer were direct agents of Sun; however, nothing they did in that capacity injured Roe. She never applied for a policy from Sun, she never received a policy from Sun, and no particular rules that Sun imposed on the office led to her alleged injury. We therefore agree that the district court properly dismissed Roe's third-party action against Sun.

Because our earlier opinion focused on the erroneous Statement of Health, it does not dispose of Roe's claims against Sewell and Dyer. As to them, Roe's argument now is that they were agents of MCIC and Sun, but they gratuitously undertook to complete her application. (Roe has waived any theory under which she might assert that Sewell or Dyer was acting as her agent. Her complaint was specific in its assertion that they were agents of MCIC and Sun only; it contains not a hint of a dual capacity argument.) Having assumed this duty toward her, they then breached it when they negligently failed to find out that she indeed had long-term disability benefits under her group policy from Aldi. As we noted before, the district court rejected this argument on the strength of the Indiana Supreme Court's decision in *Alterovitz*. But *Alterovitz* was not a suit based on the "gratuitous undertaking" tort theory; it instead was a suit by a beneficiary to recover benefits under an insurance policy. The insured had filled out the application for the policy. *Alterovitz*, 14 N.E.2d at 571. At the end of the application, the insured certified that his answers were full, true and complete, even though the questions about his prior medical history were incomplete at that time. *Id.* 14 N.E.2d at 571–72. Later, his doctor falsely indicated that the insured had never received treatment for mental illness. *Id.* 14 N.E.2d at 572. The Indiana Supreme Court, emphasizing the statutory duty of an insurance company to attach the application to the policy when issued, held

that the insured was responsible for the false answers the doctor later inserted. *Id.* 14 N.E.2d at 577. The insured both could and should have reviewed the application no later than the time he received the policy. *Cf. id.*

Our case differs in important respects from *Alterovitz*. It is the case the Indiana court would have had if the *Alterovitz* beneficiary had sued the *doctor* who misrepresented the insured's health rather than the insurance company. This distinction is not trivial, for in a suit to recover benefits, the accuracy of the information provided on the application is crucial. Insurance companies rely on the truthfulness and completeness of the information on the application in assessing whether to issue a policy and on what terms. Here, no one disputes the materiality of the information about Roe's other long-term disability coverage. *Alterovitz* tells us that Roe's signature, affirming that the application was "true, *complete*, and correctly stated" (emphasis added), put her at risk with respect to her right to benefits, in case third-parties like Sewell and Dyer introduced any misrepresentations or inaccuracies into the form. *Alterovitz* does not answer the harder question whether the incomplete application absolutely precludes her from recovering against those third-parties

On the facts as Roe has alleged them (which, we add, both Sewell and Dyer dispute vigorously), Sewell volunteered to find out about Roe's Aldi insurance and negligently or deliberately failed to do so. Instead, he instructed Dyer to record that she had no other insurance. These alleged actions certainly injured Roe in a practical sense, because it was the discrepancy between the application for insurance and the application for benefits that first called MCIC's attention to the problem with her policy. But, since Roe is not claiming they were acting as her agents, what duty to her did Sewell or Dyer breach? Relying on *Medtech Corp. v. Indiana Insurance Co.*, 555 N.E.2d 844, 849 (Ind.Ct.App.1990), and *Runde v. Vigus Realty, Inc.*, 617 N.E.2d 572, 576 (Ind.Ct.App. 1993), Roe argues that a duty arose for both of them at the time Sewell affirmatively promised to complete the application for her. Her complaint asserts that Sewell (along

with Dyer) "assumed and agreed to undertake" that task for her. When he then negligently failed to follow through, she asserts, Indiana law recognizes a special form of agency under which Sewell is liable.

In *Runde*, the Indiana Court of Appeals explained the theory as follows:

> Indiana has long recognized that an agent owes his or her principal a duty to exercise reasonable skill, care, and diligence in effecting the duties and obligations of the relationship. The gratuitous nature of the undertaking does not forestall the duty; the duty of an agent acting gratuitously is the same as other agents.

617 N.E.2d at 576 (citations and internal quotations omitted). The court went on to quote with approval from the Restatement (Second) of Agency § 378 (1984), cmt. a, which says:

> If a person, by promising or undertaking to do definite acts of service for another, realizes or should realize that it is substantially certain that the other will refrain from doing such acts for himself or securing alternative services then available, the person so promising or undertaking becomes subject to liability for harm resulting from his undertaking and subsequent failure.

*Id.* See also *Ember v. B.F.D., Inc.,* 490 N.E.2d 764, 769 (Ind.Ct.App.1986), *modified on other grounds and reh'g denied,* 521 N.E.2d 981 (Ind.Ct.App.1988). *Ember* and *Runde* indicate that Indiana courts look for the following elements in such a case: (1) a promise or other conduct indicating an assumption of a duty to undertake the act in question, (2) with knowledge that the other will rely on the promise to act, and either, (3) in a misfeasance case, affirmative conduct by the actor or, (4) in a nonfeasance case, detrimental reliance by the beneficiary or an increased risk of harm because of the failure to act. *Cf. id.* 490 N.E.2d at 769–71. *Cf. Runde,* 617 N.E.2d at 576.

Roe's allegations were enough to fall within this line of Indiana authority. She claims that Sewell, without any pre-existing duty to act on her behalf, promised her that he would investigate the scope of her disability coverage with Aldi, Inc. (Note that for this theory it is immaterial that Sewell was not otherwise Roe's agent.) He knew that she would rely on his promise; in fact, he had her sign the incomplete application so that it would be ready to send off as soon as he filled in the missing information and she gave him a green light to proceed. Last, she has alleged that she detrimentally relied on his promise. She would have contacted Aldi herself and thus would have submitted a complete application to MCIC, had it not been for Sewell's acts. If MCIC had informed her that it was unwilling to provide as much coverage as she wanted, she has also asserted that she might have investigated insurance from other carriers. *Ember* stressed that the exact scope of the duty assumed would be a question for the jury, as would be the question of the reasonableness of Roe's reliance on Sewell's promises. 490 N.E.2d at 770. Therefore, her claim that Sewell breached the duty (recognized in Indiana) to exercise reasonable care in carrying out a promised act, should have survived summary judgment.

However, neither this theory nor any of the others argued in her brief helps Roe in her suit against Dyer, which was correctly dismissed. Dyer never made any promises to her, even by her own account. He never undertook to perform any service, and as far as the record shows, she did not even know he might be involved at the time she was working on the application with Sewell. This means that she could not have relied on anything he might have done or failed to do.

Because we find that Roe may proceed against Sewell under the gratuitous assumption of duty tort theory, we briefly address two final points. First, Sewell argues that any injury he may have inflicted on Roe was superseded by her own negligence in failing to review the application when it was returned to her in October 1991, and again when she received the reissued policy on December 5, 1991. Second, he argues that her suit is barred by Indiana's two-year statute of limitations for tort claims. See Ind. Code Ann. § 34–1–2–2(1) (West 1997). With respect to the first point, Roe responds and we agree, that the effect of her own negli-

gence is something on this record properly to be considered by the trier of fact under Indiana's Comparative Fault Act. See Ind. Code Ann. §§ 34–4–33–1 to –12 (West 1997). The limitations argument is a closer one, but in the end we believe it is inconsistent with the theory underlying *Alterovitz*.

 Sewell argues that Roe knew as early as the time she signed the incomplete application in June 1991 that she had misrepresented the material fact that the application was complete. MCIC filed its suit against her on September 29, 1993, and Roe added her third-party claims against Sun, Sewell, and Dyer on December 3, 1993. If the June 1991 date is the dispositive one, then Sewell would be correct. But such a holding would greatly undermine the significance *Alterovitz* placed on the opportunity an insured party has to review the application when it is returned with the policy. *See Alterovitz*, 14 N.E.2d at 575, 577. In Roe's case, although she received MCIC's first policy around the beginning of October 1991 (with the application attached), she immediately rejected it and asked for a reissued policy. Even though neither the policy nor the application changed after this date, the first policy mailed to her was still not the policy she eventually accepted. She did not actually receive the effective policy until the December 5 meeting with Sewell. Because her suit was filed within two years of that date, we decline to find that it should have been dismissed under the statute of limitations.

For the reasons stated, we AFFIRM the judgment of the district court with respect to Sun and Dyer; we REVERSE and REMAND for further proceedings with respect to Sewell. We VACATE the court's judgment on Roe's request for punitive damages against Sewell, so that the court may reconsider it in light of the claim that remains in the case. Each side is to bear its own costs on appeal.