Terence E. BRENNAN, Jr. a/k/a Terry Brennan, and Burt Insurance Company, Appellants–Defendants,

v.

Patricia HALL and Harry Hall, Appellees–Plaintiffs.

No. 64A03–0811–CV–548.

Court of Appeals of Indiana.

April 21, 2009.

---

Joseph Stalmack, Joseph Stalmack & Associates, P.C., Hammond, IN, Attorney for Appellants.

Colby A. Barkes, Hoeppner Wagner & Evans, LLP, Merrillville, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Terence Brennan and Burt Insurance Agency ("Burt") appeal a jury's verdict in favor of Patricia and Harry Hall. We affirm.

### Issue

The sole restated issue is whether the jury properly found Brennan and Burt liable for negligently failing to procure insurance for the Halls.

### Facts

The evidence most favorable to the verdict is that in late 2002, Patricia contacted Brennan, an insurance broker working at Burt, and asked him to look into homeowner's insurance policies for the Halls. Patricia told Brennan she had three specific concerns she would want the policy to address: coverage for her dogs, earth-quake coverage, and coverage for a wood burning stove. Brennan later informed Patricia that he had found a suitable policy through Buckeye State Mutual Insurance Company ("Buckeye").

On January 9, 2003, Patricia went to Brennan's office to fill out an application for a Buckeye homeowner's policy. Brennan sat across from Patricia and filled out the form in accordance with questions he asked her. Question nine on the "General Information" portion of the application asked, "Does applicant or any tenant have any animals or exotic pets? (Note breed and bite history)". Ex. p. 129. Patricia told him that she had dogs, and Brennan then asked if any of them were "vicious." Tr. p. 37. Patricia said no, and Brennan marked a "no" box next to question nine. After Brennan finished filling out the application, he gave it to Patricia to sign. Patricia did not read over the entire application, "because I figured he went through and he had answered all the questions that he was going to ask, and I just handed it back to him." Id. at 39. Additionally, Patricia indicated she felt rushed to sign the application, because "I was in a hurry, he was in a hurry, and he had people coming in, the telephone was ringing, and I just basically did what he told me to do." Id. The box where Patricia signed stated in part, "I have read the above application and any attachments. I declare that the information provided in them is true, complete and correct to the best of my knowledge and belief." Ex. p. 129.

In August 2004, one of the Halls' dogs, a Doberman Pinscher, bit their niece. When the Halls made a claim on the Buckeye policy, Buckeye denied coverage for the claim and additionally declared the policy null and void for "material misrepresentation," i.e. the application's failure to disclose that the Halls had a Doberman Pinscher. App. p. 72. Buckeye also indi-

cated that it never would have issued a homeowner's policy to the Halls in the first place if it had known the Halls owned a Doberman Pinscher. The niece filed a lawsuit against the Halls. That action apparently still is pending.

On December 20, 2006, the Halls filed suit against Brennan and Burt, alleging negligence, breach of fiduciary duty, and constructive fraud by failing to acquire an adequate insurance policy for the Halls. The Halls did not sue Buckeye to seek coverage under the policy. Brennan and Burt moved for summary judgment against the Halls, which was denied. On October 21, 2008, a jury found that Brennan and Burt were liable to the Halls based on negligent failure to procure a policy.[1] However, no damages were assessed because the amount of damages the Halls were seeking—i.e. the costs to the Halls of defending against their niece's lawsuit and any liability that may ensue from it—were not yet known. Brennan and Burt now appeal.

### Analysis

■■■■ In any negligence action, there are three elements a plaintiff must prove in order to recover: (1) the defendant owed the plaintiff a duty to conform his or her conduct to a standard of care arising from a relationship with the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach of that duty proximately caused an injury to the plaintiff. *Briesacher v. Specialized Restoration and Constr., Inc.,* 888 N.E.2d 188, 192 (Ind.Ct. App.2008). More specific to this case, an insurance agent or broker who undertakes to procure insurance for another is an

agent of the proposed insured, and owes the proposed insured a duty to exercise reasonable care, skill, and good faith diligence in obtaining the insurance. *Stockberger v. Meridian Mut. Ins. Co.,* 182 Ind. App. 566, 576, 395 N.E.2d 1272, 1279 (1979). If the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of the duty to obtain insurance. *Id.* The agent also incurs a duty to inform the principal if he or she is unable to procure the requested insurance. *Anderson Mattress Co. v. First State Ins. Co.,* 617 N.E.2d 932, 939 (Ind.Ct.App.1993), *trans. denied.*

■■■■ Brennan and Burt do not dispute that they owed a duty to the Halls; they contend that they did not breach that duty.[2] Whether a defendant has breached a duty generally is a question for the trier of fact. *Cox v. Paul,* 828 N.E.2d 907, 911 (Ind.2005). "However, if any reasonable jury would conclude that a specific standard of care was or was not breached, the question of breach becomes a question of law for the court." *Id.* at 912. Although a jury's verdict may be overturned if it is legally or logically inconsistent, contradictory, or repugnant, we will indulge every reasonable presumption in favor of the legality of the verdict. *Simon Property Group, L.P. v. Brandt Constr., Inc.,* 830 N.E.2d 981, 988 (Ind.Ct.App.2005), *trans. denied.* We will sustain the judgment on any theory consistent with the evidence and will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

---

**1.** At the close of evidence the trial court granted judgment on the evidence in favor of Brennan and Burt on the Halls' breach of fiduciary duty and constructive fraud claims.

**2.** Brennan is an insurance broker who obtained policies from various companies for his

clients. As an insurance broker and not an agent for one specific company, any negligence on his part could not be imputed to Buckeye. *See Stockberger,* 182 Ind.App. at 576, 395 N.E.2d at 1278.

Although at trial Brennan and Burt presented evidence contrary to Patricia's version of events of how the application was filled out, and specifically whether she told Brennan that she had dogs, on appeal they concede that we must credit Patricia's testimony. The salient issue we will consider is whether Brennan was negligent in procuring insurance for the Halls, where Patricia specifically advised that she wanted coverage for her dogs, Brennan filled out the application and indicated the Halls had no dogs after Patricia specifically stated that they had dogs, but Patricia signed the application, which included a statement that the application was complete and accurate.

■■■ It is true that generally, a material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option. *Foster v. Auto–Owners Ins., Co.,* 703 N.E.2d 657, 659 (Ind.1998). It makes no difference if a potential insured provides accurate information to an insurance agent, but the agent incorrectly fills out the application, so long as the potential insured had an opportunity to review the application and signs it. *See id.* at 659–60 (citing *Metropolitan Life v. Alterovitz,* 214 Ind. 186, 196, 14 N.E.2d 570, 574 (1938)). An applicant who signs an application containing material misrepresentations is chargeable with the knowledge of the false statements and must be held to have adopted them as his or her own. *Jesse v. American Community Mut. Ins. Co.,* 725 N.E.2d 420, 424 (Ind.Ct.App. 2000), *trans. denied.*

*Foster, Alterovitz,* and *Jesse* all were actions by an insured against an insurance company, seeking recovery under a policy. The Halls, by contrast, are not seeking any recovery against Buckeye. They are suing only Brennan and Burt for their alleged negligence in the application process, which left the Halls without any homeowner's insurance generally, and without specific coverage for the dog bite. No Indiana state court case has addressed precisely this question.

The Seventh Circuit, however, has addressed a scenario similar to the present one in an opinion applying Indiana law, *Roe v. Sewell,* 128 F.3d 1098 (7th Cir.1997). In *Roe,* a potential insured approached Sewell, an insurance agent, about procuring a long-term disability insurance policy. Roe, the potential insured, signed an insurance application attesting that it was complete and accurate, despite the fact that one of the questions was left blank on the application. The question pertained to any other disability insurance Roe had; Roe told Sewell she had some form of such insurance through her employer, and Sewell promised Roe that he would investigate the details of that insurance and complete the application for her. Sewell never did investigate this question and incorrectly indicated on the application that Roe did not have any other disability insurance.

Roe later had an opportunity to review the incorrectly-completed application when she received the insurance policy with the application attached, but she did not do so. Shortly thereafter, Roe suffered an injury at work and sought benefits under the policy. Upon discovering that the application contained a misrepresentation regarding the existence of other disability insurance, the insurer denied coverage and rescinded the policy. Roe then sued the insurer and Sewell, among others. The Seventh Circuit affirmed a grant of summary judgment in favor of the insurer. *Massachusetts Cas. Ins. Co. v. Roe,* 93 F.3d 323 (7th Cir.1996). However, it reversed the district court's grant of summary judgment in favor of Sewell.

The court expressly noted that the case before it regarding Sewell was unlike *Alterovitz*. It stated:

> [This] is the case the Indiana court would have had if the *Alterovitz* beneficiary had sued the *doctor* [the agent of the insurer] who misrepresented the insured's health rather than the insurance company. This distinction is not trivial, for in a suit to recover benefits, the accuracy of the information provided on the application is crucial. Insurance companies rely on the truthfulness and completeness of the information on the application in assessing whether to issue a policy and on what terms.

*Roe*, 128 F.3d at 1103. The court also noted that *Alterovitz* "does not answer the harder question" of whether an incomplete or inaccurate application absolutely precludes an applicant from recovering against third parties who may have assisted in filling out the application. *Id.* On the facts most favorable to Roe, the court ultimately concluded that there was sufficient evidence for her to proceed on her claim against Sewell for failing to exercise reasonable care in completing the application.[3] *Id.* As for Sewell's contention that Roe herself was negligent in failing to review the incorrectly-completed application at the earliest opportunity, the court concluded "that the effect of her own negligence is something on this record properly to be considered by the trier of fact under Indiana's Comparative Fault Act." *Id.* at 1104–05.

▮▮ We find persuasive the Seventh Circuit's limitation of *Alterovitz* to cases by an insurance applicant directly against an insurance company. It does not prohibit suits by an insurance applicant against an agent who may have been negligent in the application process. This is entirely consistent with well-settled Indiana law that requires an agent retained to procure insurance for another to use reasonable skill, care, and diligence to obtain the desired insurance, or else face being held to answer in damages if the insurance is not obtained. *See Anderson Mattress Co.*, 617 N.E.2d at 939. We hold that if an agent is negligent in assisting a client complete an insurance application, and such negligence leads to a basis for the insurance company to deny coverage to the applicant and/or revoke the policy, the applicant may seek damages from the agent, even if the applicant signed or ratified the application after having a chance to review it.

Here, the evidence most favorable to the verdict is that Patricia told Brennan that she had dogs. She did so at least twice: once when she specifically told Brennan that she wanted a homeowner's policy that would cover her dogs, and again when the application was being filled out by Brennan. When Patricia told Brennan that yes, she had dogs, Brennan responded by asking whether they were vicious; Patricia said they were not.[4] This question, particularly when combined with Brennan's indicating on the application that the Halls had no dogs, might have suggested to a person in Patricia's position that the application only needed to disclose the existence of vicious dogs. Certainly, the jury would have been justified in making such

---

**3.** Roe had not alleged that Sewell was acting as her agent in procuring insurance, so the Seventh Circuit instead analyzed whether Sewell had assumed a duty to complete the application on her behalf. *Roe*, 128 F.3d at 1103. The Halls, conversely, clearly alleged that Brennan had a duty as their agent to procure insurance for them. Brennan and Burt do not dispute this.

**4.** There is no indication in the record that this was a deliberate misrepresentation on Patricia's part, i.e. there is no evidence that any of her dogs had ever bitten anyone before.

an inference. Moreover, as for Patricia not carefully reading over the application before signing it, there was evidence that she felt rushed to sign it. Additionally, it is reasonable to infer that Patricia was relying on Brennan's expertise as an insurance agent and trusting that he accurately completed the application.

Brennan and Burt argue, correctly, that "[a]n agent or broker is not liable when the insured's loss is due to the insured's own act or omission." *Stockberger*, 182 Ind.App. at 577, 395 N.E.2d at 1279. This statement in *Stockberger*, however, was immediately preceded by the observation that an applicant for insurance has a "duty . . . to provide the agent or broker with the information necessary to implement the policy." *Id.*, 395 N.E.2d at 1279. Here, Patricia did provide accurate information to Brennan, but Brennan failed to incorporate that information into the application, which led to the revocation of the policy and denial of coverage for the Halls' dog-bite claim. The jury as fact-finder was entitled to conclude that the manner in which Brennan handled the application process was a breach of his duty to the Halls to procure the insurance they requested and negligent.

Brennan and Burt also contend that they should not be liable to the Halls because, in any event, Buckeye would not have issued a homeowner's policy to them if the information regarding their dogs had been included on the application. This goes directly to the heart of the Halls' complaint against Brennan and Burt. Patricia specifically requested coverage for their dogs; the policy Brennan selected did not provide such coverage. Brennan testified that he could have acquired such a policy from another company, but he did not. That in itself would appear to be a breach of his duty to procure insurance specifically requested by Patricia. Additionally, if there was no policy that he could have obtained for the Halls that would have covered their dogs, he was obligated to inform them of that fact. *See Anderson Mattress Co.*, 617 N.E.2d at 939.

█ There is sufficient evidence from which the jury could have concluded that Brennan's actions amounted to a breach of his duty to procure insurance requested by the Halls. Such breach led to the Halls being damaged because they lack coverage for the dog bite claim. To the extent Patricia herself might share some of the blame for the inaccurate application and subsequent denial of coverage, we agree with the *Roe* court that it would be more appropriate to assess her fault in accordance with the Comparative Fault Act, just as would be the case in another ordinary negligence action; it is not a basis for completely barring the Halls' action. *See Roe*, 128 F.3d at 1104–05. Brennan and Burt, however, did not make such an argument before the trial court.

### Conclusion

The jury's verdict in favor of the Halls, finding that Brennan and by extension Burt negligently breached their duty to procure insurance for the Halls, is supported by the evidence. We affirm.

Affirmed.

BAKER, C.J., and MAY, J., concur.