**WEST BEND MUTUAL INSURANCE COMPANY, Appellant–Intervenor/Defendant,**

v.

**1ST CHOICE INSURANCE SERVICES, Appellee–Third Party Defendant.**

No. 71A03–0905–CV–220.[1]

Court of Appeals of Indiana.

Dec. 29, 2009.

Rehearing Denied March 9, 2010.

<hr />

1. The caption is limited to the two remaining parties on this appeal. *See* Facts and Procedural History section of this opinion.

Matthew J. Hagenow, Newby, Lewis, Kaminski & Jones, LLP, LaPorte, IN, Attorney for Appellant.

Philip E. Kalamaros, Hunt Suedhoff Kalamaros, LLP, St. Joseph, MI, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Intervenor/Defendant, West Bend Mutual Insurance Company (West Bend), appeals the trial court's grant of summary judgment in favor of Appellee–Third Party Defendant, 1st Choice Insurance Services (1st Choice), with respect to insurance coverage for a fire loss.

We reverse and remand for further proceedings.

### ISSUE

West Bend raises two issues on appeal, one of which we find dispositive and which we restate as the following issue: Whether there is a genuine issue of material fact indicating that the insurance agent was negligent in completing the insurance application for Brenda Howard.

*FACTS AND PROCEDURAL HISTORY*

On April 30, 2004, Welco Realty, LLC, as the seller of the Welco Truck Stop, entered into a Purchase Agreement containing a Contract for Conditional Sale of Real Estate and Sale with Lowell Howard and Brenda Howard (Brenda) (collectively, the Howards), as the buyers of the real estate. The Purchase Agreement contained a provision that required the buyers to maintain insurance on the property and to list the seller as mortgagee under the Standard Mortgage Insurance Clause. Pursuant to this provision, Brenda procured insurance through West Bend and included Charles M. Kesmodel, Jr. and Wilma Kesmodel (collectively, the Kesmodels) as additional insureds. The Kesmodels, together with their son and daughter-in-law, are the sole members of Welco Realty, LLC. After a series of late and missed premium payments, a notice of cancellation was issued by West Bend on November 8, 2004, and became effective November 20, 2004.

In the fall of 2004, Brenda contacted 1st Choice Insurance Services (1st Choice) and obtained a quote for business insurance for the truck stop. On December 15, 2004, Brenda met with Carrie Block (Block), an employee and insurance agent of 1st Choice. During the meeting, Block completed an Application for Commercial Insurance for the Welco Truck Stop through Auto–Owners Insurance Company (Auto–Owners) using the information provided by Brenda. Block went through the application point-by-point with Brenda. At Brenda's direction, Block listed the Welco Truck Stop and Brenda as applicants and included the amount of insurance coverage requested by Brenda. However, while Brenda indicated to Block that she was the owner of the property, Block did not specifically question her if anybody else had any other ownership interest in the property or whether she was buying the prop-

erty on loan as Brenda had admitted to Block that she was a first-year business owner.

After completing the application, Block handed Brenda the application to read and sign, which Brenda did. Prior to leaving Block's office and before the application was submitted to 1st Choice, Block noticed that Brenda had a copy of a portion of the commercial insurance policy with West Bend with her. Block requested that Brenda leave a copy with her. This documentation provided that Charles and Wilma Kesmodel were listed as additional insureds on the West Bend policy. Block did not review this documentation but instead submitted the application to Auto–Owners.

On January 4, 2005, Block received a copy of the insurance policy issued for the Welco Truck Stop from Auto–Owners. Block first checked to ensure that the policy was consistent with the application submitted by her on Brenda's behalf. She then cross-checked the policy with the portion of the West Bend policy and noted, for the first time, that the Kesmodels were listed on that policy. Block made a mental note to ask Brenda if the Kesmodels continued to have an interest in that property. Block attempted to contact Brenda several times to arrange to drop off her policy and to question whether the Kesmodels continued to have an interest in the property but she was unable to reach Brenda prior to January 16, 2005.

On January 16, 2005, a fire occurred at the Welco Truck Stop. Following the fire, on the morning of January 17, 2005, Brenda notified Block of the loss. Block drove to the truck stop and met with Brenda. At that time, Brenda indicated that the Kesmodels still had an interest in the property and Block included the names of the Kesmodels on the Mortgagee line of

the Property Loss Notice form which she sent to Auto–Owners to report the loss. On at least three separate occasions thereafter, Brenda submitted a sworn statement in proof of loss forms to Auto–Owners for payment of claims arising from the fire. On each form, she identified the Kesmodels as having an interest in the property. Nevertheless, Block was informed by Auto–Owners that since the loss had already occurred, a change could not be made to the policy. Auto–Owners refused to pay any policy proceeds.

On November 14, 2006, Welco Realty and the Kesmodels filed their Complaint for Forfeiture and Termination of Contract for Conditional Sale of Real Estate against the Howards under Cause No. 71C01–0611–CT–160 (Cause 160). Approximately one week later, the Kesmodels filed a Complaint against West Bend alleging negligence and breach of contract with respect to the notice of cancellation and payment of a fire loss claim. On December 19, 2006, Brenda filed a Complaint against Auto–Owners and the Kesmodels under Cause No. 71C01–0612–PL–206 (Cause 206) as a result of the denial of the insurance claim by Auto–Owners.

On January 12, 2007, Welco Realty, LLC and the Kesmodels filed a third-party complaint against 1st Choice and a cross claim against Auto–Owners in Cause 206. On August 2, 2007, West Bend filed a Motion to Intervene or Joinder in Cause 160, which was granted by the trial court. On August 30, 2007, West Bend then filed a Motion to Consolidate all lawsuits under Cause 160, which was also granted by the trial court. Thereafter, on January 3, 2008, the trial court granted Auto–Owners' Motion to Dismiss Brenda's Complaint with prejudice pursuant to Ind. Trial Rule 41(E).

On July 15, 2008, 1st Choice filed its Motion for Summary Judgment, Memorandum of Law, and Designated Evidence against the Third–Party Claim brought by Welco Realty, LLC and the Kesmodels. On September 22, 2008, West Bend filed a response to 1st Choice's motion. In addition, the Kesmodels also filed a response. On January 6, 2009, 1st Choice filed its reply. The next day, on January 7, 2009, the trial court conducted a hearing on 1st Choice's motion. Subsequently, on March 24, 2009, the trial court summarily granted 1st Choice's Motion for Summary Judgment.

On April 28, 2009, the Kesmodels and West Bend, among others, participated in mediation. At the mediation, the Kesmodels and Welco Realty LLC settled their claims against West Bend for payment of $225,000. In exchange for the payment, they assigned to West Bend all rights and claims that they had against 1st Choice, Auto–Owners, the Howards, and the Welco Truck Stop. On September 15, 2009, the trial court granted a motion to re-designate the case to show West Bend as the real party in interest.

West Bend now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

This cause comes before this court as an appeal from a grant of summary judgment. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct.App.2008), *trans. denied.* Thus, on ap-

peal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607–08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* at 608.

The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id.*

We observe that, in the present case, the trial court entered no findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.,* 816 N.E.2d 40, 48 (Ind.Ct.App.2004). However, such findings would have offered this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *See id.*

## II. *Analysis*

West Bend now contends that the trial court erred by granting summary judgment in favor of 1st Choice because there are genuine issues of material fact as to whether Block might share some of the blame for the inaccurate or incomplete application which failed to list the Kesmodels as having an interest in the truck stop and which directly resulted in Auto–Owners' refusal to pay insurance proceeds to the Kesmodels after the fire loss. In support

of its negligence argument, West Bend relies on *Brennan v. Hall,* 904 N.E.2d 383 (Ind.Ct.App.2009).

However, West Bend acknowledges that its argument in reliance on *Brennan* was not available before the trial court because the decision was issued one month after the trial court entered its summary judgment; rather this argument is now made for the first time on appeal. 1st Choice does not assert that West Bend waived the argument. Generally a party may not raise an issue on appeal that was not raised to the trial court, even in summary judgment proceedings. *McGill v. Ling,* 801 N.E.2d 678, 687 (Ind.Ct.App. 2004), *trans. denied.* Still, a party who raises a new issue for the first time on appeal does not necessarily waive that claim if the opposing party had unequivocal notice of the existence of the issue and an opportunity to defend against it. *Id.* at 687–88. Here, West Bend develops its *Brennan* argument as part of its overall assertion that 1st Choice and Block were negligent in fulfilling their duty as insurance agent for Brenda. Specifically, the Complaint phrases this claim as "Upon information, [1st Choice] failed to list the Kesmodels as mortgagees under the Standard Mortgage Insurance Clause." (Appellant's App. pp. 172, 173–74). Thus, even though the particular argument based on *Brennan* was not made before the trial court, 1st Choice was unequivocally put on notice that West Bend claimed negligent conduct in the completion of the insurance application. As such, West Bend did not waive its argument and we will address West Bend's contention on its merits.

In any negligence action, there are three elements a plaintiff must prove in order to recover: (1) the defendant owed the plaintiff a duty to conform his or

her conduct to a standard of care arising from a relationship with the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach of that duty proximately caused an injury to the plaintiff. *Briesacher v. Specialized Restoration and Constr., Inc.,* 888 N.E.2d 188, 192 (Ind.Ct. App.2008). More specific to the cause at hand, an insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured, and owes the proposed insured a duty to exercise reasonable care, skill, and good faith diligence in obtaining insurance. *Stockberger v. Meridian Mut. Ins. Co.,* 182 Ind. App. 566, 395 N.E.2d 1272, 1279 (1979). If the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of the duty to obtain insurance. *Id.* The agent also incurs a duty to inform the principal if he or she is unable to procure the requested insurance. *Anderson Mattress Co. v. First State Ins. Co.,* 617 N.E.2d 932, 939 (Ind.Ct. App.1993), *trans. denied.*

▬▬▬ Generally, a material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option. *Foster v. Auto–Owners Ins., Co.,* 703 N.E.2d 657, 659 (Ind.1998). It makes no difference if a potential insured provides accurate information to an insurance agent, but the agent incorrectly fills out the application, so long as the potential insured had an opportunity to review the application and signs it. *See id.* at 659–60 (citing *Metropolitan Life v. Alterovitz,* 214 Ind. 186, 14 N.E.2d 570, 574 (1938)). An applicant who signs an application containing material misrepresentations is chargeable with the knowledge of the false statements and must be held to have adopted

them as his or her own. *Jesse v. American Comty. Mut. Ins., Co.,* 725 N.E.2d 420, 424 (Ind.Ct.App.2000), *trans. denied.*

*Foster, Alterovitz,* and *Jesse* were all actions by an insured against an insurance company, seeking recovery under a policy. West Bend, by contrast, is not seeking any recovery against Auto–Owners, the insurer. They are suing 1st Choice for its alleged negligence in the application process which left the Kesmodels without any coverage for the fire loss at the truck stop. The only Indiana state court case which has precisely addressed this issue is *Brennan v. Hall,* 904 N.E.2d 383 (Ind.Ct.App. 2009).

In *Brennan,* Hall contacted Brennan, an insurance broker, and inquired about homeowner's insurance policies. *Id.* at 385. Hall specifically indicated that she had three concerns that any policy should address: coverage for her dogs, earthquake coverage, and coverage for a wood burning stove. *Id.* During the application process in Brennan's office, Brennan filled out the insurance application form based on the responses Hall gave to the questions he posed. *Id.* One of the questions on the application asked whether the applicant had any animals. *Id.* Hall informed Brennan that she had dogs. *Id.* Brennan then asked if any of them were vicious. *Id.* Hall said no, and Brennan marked a "no" box next to the question. *Id.* After he finished filling out the application, he gave it to Hall to sign. *Id.* Hall did not read over the entire application before signing it. *Id.* Approximately six months later, one of Hall's dogs bit Hall's niece. *Id.* When Hall made a claim under her homeowner's policy, the insurance company denied the coverage and additionally declared the policy null and void for material misrepresentation. *Id.* Hall brought suit against Brennan, alleging negligence

for failing to acquire an adequate insurance policy. *Id.*

After distinguishing *Foster, Alterovitz, and Jesse,* the *Brennan* court focused its analysis on *Roe v. Sewell,* 128 F.3d 1098 (7th Cir.), a Seventh Circuit opinion which applied Indiana law. In *Roe,* Roe signed an insurance application attesting that it was complete and accurate, despite the fact that one of the questions was left blank on the application. *Id.* at 1100–01. The question pertained to any other disability insurance Roe had; Roe told Sewell, the insurance agent, that she had some form of insurance through her employer, and Sewell promised Roe that he would investigate the details of that insurance and complete the application for her. *Id.* at 1101. Roe later had an opportunity to review the incorrectly completed application when she received the insurance policy with the application attached, but she did not do so. *Id.* Shortly thereafter, Roe suffered an injury at work and sought benefits under the policy. *Id.* Upon discovering that the application contained a misrepresentation regarding the existence of other disability insurance, the insurer denied coverage and rescinded the policy. *Id.* The *Roe* court concluded that there was sufficient evidence for Roe to proceed on a claim against Sewell for failing to exercise reasonable care in completing the application. *Id.* at 1103. As for Sewell's contention that Roe herself was negligent in failing to review the incorrectly completed application at her earliest opportunity, the court concluded "that the effect of her own negligence is something on this record properly to be considered by the trier of fact under Indiana's Comparative Fault Act." *Id.* at 1104–05.

Finding *Roe* to be persuasive, the *Brennan* court noted that *Roe's* holding was consistent with well-settled Indiana law that requires an agent retained to procure insurance for another to use reasonable skill, care, and diligence to obtain the desired insurance, or else face being held to answer in damages if the insurance is not obtained. *Brennan,* 904 N.E.2d at 388. In turn, *Brennan* held that "if an agent is negligent in assisting a client complete an insurance application, and such negligence leads to a basis for the insurance company to deny coverage to the applicant and/or revoke the policy, the applicant may seek damages from the agent, even if the applicant signed or ratified the application after having a chance to review it." *Id.* at 388. Based on this holding and the facts before it, the court concluded that the jury could have found that Brennan's actions amounted to a breach of his duty to procure insurance as requested by Hall. *Id.* at 389.

 Turning to the case at hand, the designated evidence shows that Brenda met with Block to complete an insurance application to insure the truck stop. Block filled out the application based on Brenda's responses to Block's questions. Block testified that she did not recall asking Brenda about additional interests in the truck stop or mortgages against the property even though this is one of the questions on the insurance application. Additionally, Block also stated in her deposition that she never asked Brenda if she was buying the property on loan, despite the fact that Brenda told her that she was in her first year owning the property. Prior to leaving Block's office and before the application was submitted to Auto–Owners, Brenda gave Block a copy of the declarations page of the West Bend policy, her previous policy. This documentation clearly indicated that the Kesmodels were listed as additional insureds. Block testified that she did not review this declarations page but instead submitted the application to Auto–Owners who issued a policy based on the information contained in the

application. Only after Block received Auto–Owners' insurance policy, did Block review the copy of West Bend's policy and noticed the Kesmodels listed as additional insureds. However, before she could deliver the insurance policy to Brenda and clarify the Kesmodels' interest in the truck stop, the truck stop was damaged by a fire. The failure to add the Kesmodels as additional insureds resulted in the Kesmodels being denied for coverage after the fire loss.

Mindful of *Brennan* and *Roe*, we find that there is a material issue of fact whether Block committed negligence when completing the insurance application on Brenda's behalf. Brenda supplied Block with all the information she needed, be it verbally or in writing, to correctly complete the insurance application. Nevertheless, the designated evidence clearly reflects that Block failed to review all the information prior to submitting the application to Auto–Owners. Although there is evidence indicating that Block may have committed a breach of her duty to Brenda, to the extent Brenda herself might share some of the blame for the inaccurate application and subsequent denial of coverage, we agree with *Brennan* and *Roe* that it would be more appropriate to assess her fault in accordance with the Comparative Fault Act, just as would be the case in another ordinary negligence action. Therefore, we reverse the trial court's grant of summary judgment in favor of 1st Choice and remand for further proceedings.

### CONCLUSION

Based on the foregoing, we find that there is a genuine issue of material fact whether Block, the insurance agent, was negligent in completing the insurance application for Brenda.

Reversed and remanded for further proceedings.

VAIDIK, J., and CRONE, J., concur.